Yates, J.
The first question arising on the appeal of D Gelston, is, whether the judgment in his favour against Comfort Sands could at all be affected by the previous conveyance to Henry Sands 1 and if not,
Whether the subsequent acts of Gelston have operated either-as an extinguishment of the debt, or as a destruction of the lien he had in virtue of that judgment?
On an appeal from the court of chancery, in relation to the conveyance of C. Sands to Henry Sands, the decision of this court is sufficiently explicit to prevent a misconstruction of their decree. By it the conveyance of the real estate situate at Brooklyn was declared void, as against the creditors of C. Sands; and the said estate, remaining in him at the time he became a bankrupt, passed to his assignee. The deed being void, and the estate declared to be in him at the time he became a bankrupt, it consequently passed to the assignee in the same manner as though the deed had never existed, thereby evidently intending to preserve prior encumbrances; so that the judgment of the appellant, Gelston, could not be affected by such deed. I can discover no possible reason why a fraudulent and void conveyance should interfere with a subsequent judgment for a bona fide debt, against a person afterwards a bankrupt. It would be as contrary to the established principles, as to the rights of creditors, and operate m a discouragement to the attentive and vigilant creditor. On the naked question (disconnected with acts which might amountrie a waiver of his lien) there can be no doubt that he retamed *526 judgment. Indeed, the law of congress, securing judgments be* fore bankruptcy, is conclusive on this subject; but it is said Gelston has lost the benefit of this judgment: 1. By accepting of the assignment to Nathaniel Prime, alleged to be in lieu of it, an[j ky discharging Sands from his confinement; 2. By assenting ¡he order of the 2d of June, 1804.
The situation of Gelston as to the assignment, can be ascertained only from his answer to the bill, by which it appears that he-had no agency in procuring the assignment. It was in consequence of information of it, that he released Comfort Sands from his confinement, being in on surrender of bail; and he held no other security for the amount of the judgment of which he now claims the benefit. This recognition, or acceptance of the assignment, could not destroy the lien created by the judgment. He had a right to accept of additional, without injuring his existing security: and unless an express agreement had been entered into to accept it in satisfaction of the debt, it. cannot be so construed. The discharge from confinement, by surrender on bail, could not have that operation. The acceptance of the assignment was increasing the security for the debt. He might hold both, and was not bound to make his election between them.
Whether by the order of the 2d of June, 1804, he has not so far waived his judgment as to be placed upon a footing with the other creditors, is the next subject of inquiry. This order must have been obtained with a view of advancing the interest of all parties concerned, under a supposition that disposing of the estate at auction in small parcels at different periods, would insure a higher price than a sale of the whole in the aggregate ; and the master was directed, after paying off the mortgage to the bank of Nem-York, and deducting charges, to bring the surplus (if any) into the court of chancery, to be disposed of according to the further order of the court.
Having before shown that the acceptance of the assignment, and the release of the debtor from confinement, could not destroy the lien on this property created by the judgment, it is evident^ then, if this order had not been made, the remedy at law would have been open to the appellant, and he might have issued his execution and sold the property, subject to the mortgage and other encumbrances. But by assenting to this order he has precluded himself. The money is in the court of chancery, and, it is said, that the favourite maxim of that court is, equality among *527 -¿editors ; that Gelston having obliged himself to resort to equity, he must now take in pari passu with the other creditors; and the case of Plunket v. Penson (2 Atk. 290.) is cited in support of this doctrine. That was a controversy between a bond creditor and the simple contract creditors; and the question was, whether the assets of the testator were legal or equitable, on which the preference of the bond creditor, or his taking in pari passu with the simple contract creditors, depended. The testator was a cesiuy que trust of a real estate which he mortgaged, and having the equity of redemption of a trust estate, he made a will, and devised the estate to others. The bond creditor, after his death, was forced to come into equity to seek relief out of a fund created by that court. It was decided he should take in pari passu with the simple contract creditors. The principle established by that case is, that a court of equity will never take away from a creditor a right he has at law, but having no such right, and the fund being created by the court, the creditors are placed upon the same footing; but in the present case it is otherwise.
The judgment of Gelston was a lien, and the remedy at law existed, until this order by consent was obtained, and this, in my view, was assented to, for the benefit of all parties, according to their respective rights: and shall a court of equity say to a person in this situation, u although you have assented to this order, so that the most might be made out of the estate, without intending to lose your priority, yet as by this assent you must come into this court to ask relief, yon shall be deprived of the remedy you had at law, and be placed upon a footing with the other creditors ?” It cannot be so. The judgment was a lien on the subject out of which the fund was created, and his assent, as stated, could not operate so as to prevent a court of equity from, securing it. It is true, the prosecuting creditors caused the examination into the validity of the conveyance to Henry Sands to be made, without which be never would have received the benefit now claimed; but the conduct of those creditors, in proceeding against him, has effectually prevented his interference. How far other creditors ought to have assisted, is, perhaps,, a distinct consideration. It could not be expected that Gelston would contribute to the expenses of a suit against him, in hostility to his rights. I am, therefore, of opinion, that the amount o£ the judgment must be satisfied out of the proceeds of this estate., after the payment of prior encumbrances, if sufficient remains* onto the extent of that fund.
*528 It is said'that his priority cannot be inquired into on petition$ and as the extent of the appellant’s right cannot be ascertained without this inquiry, a bill ought to have been filed for the purpose. I can discover no reason why this is not a proper subject 0f reference f0 a master. In the cases cited from' 2 Vesey, sen. 57]. 577. the court referred it to a master to settle priorities of creditors. The chancellor, therefore, ought to have proceeded on the petition. It never could have been intended by the decree of this court, in relation to the conveyance of C. Sands to H. Sands, to interfere with the proceedings on the decree of sale, according to the bill of foreclosure of the New-York bank, on their mortgage, and prevent the speedy distribution of the fund, arising out of the sales of the property above the amount due them, by the court of chancery, according to existing liens thereon, but obligó the judgment creditor to have recourse to the assignee whose rights certainly could not extend beyond those of C. Sands himself. The proceedings, therefore, ought to be sent back to the court of chancery, with directions that the proceeds of the sales' of the Brooklyn estate be brought into that court, and to settle the priority of the liens thereon, and that the amount due the appellant, upon his judgment, be paid according to its priority, and in preference to the assignees of C. Sands. I can see no ground for the cross appeal of Codwise and others, brought to have the decree of the 23d September rectified; that ought also to be dismissed.
Kent, Ch. J.
There are two appeals pending between these parties, one brought by Gelston from the chancellor’s order of September, 1810, and a cross appeal by Codwise and others, from the decree of September, 1809. They were argued together. '
1. As to the cross appeal of Codwise and others. The complaint here is that as to Gelston, who was made a defendant ia the original bill filed by Codwise and others against Comfort Sands and his sons, in 1801, the bill was dismissed, with costs; but I think here is no ground for complaint. The allegation in the bill that Gelston bad taken Comfort Sands in execution, arid discharged him, was not true in fact. Sands had never been taken in execution on the judgment of Gelston. Sands had been surrendered by bis bail, and Gelston had consented to his discharge from prison on such surrender. But that was no satisfaction of the debt; and Gelston. in his answer says he had not been paid, and *529 insists on the benefit of the assignment to Prime of ar debt due Sands from the United States, in trust to pay him and certain other creditors. Gelston was not bound to elect between the judgment and that assignment. He was not called upon by the bill to make that election, and there was no just ground for a decree that the judgment was discharged, or that Gelston should then be put to his election. The main allegation in the bill as to him having failed, he was entitled to be dismissed with costs. Whether the chancellor ought or ought not to have made some further decree relative to the debt due Sands from the United, States, is a question that did not affect the case of Gelston. The purpose for which he had been made a defendant had failed. This decree ought, therefore, to be affirmed.
2. On the appeal by Gelston, the first question is, whether, without reference to the merits of his case, he was entitled to the relief sought by petition. It may be difficult to draw a precise line between cases in which a party may be relieved upon petition, and in which he must apply more formally by bill. Petitions are generally for things, which are matters of course, or upon some collateral matter which has reference to a suit in court. The case before us was of the latter kind, as G. asked only to be paid the amount of the moneys brought into court, and upon which he had a lien. Gelston was not a novus hospes. He had been before the court in the very cause, and his case was well known, and the court had already declared that he was entitled to priority of satisfaction in preference to the general creditors. In the case cited from 1 Ves. jun. 453. Ex parte Bromfield, the heir at law of a lunatic applied, by petition, for the money which had arisen from the sales of his estate, and been paid into court. There was no question raised about the mode of application. The merits were discussed at large, both by the counsel and the court, and on account of the great consequence of the point, the chancellor said that the case must be put into the shape of a bill. The mode of application depends very much upon the discretion of the court, and in this case I think it was well enough, and suited to the object. There is no well-founded objection to this mode, on account of any difficulty in settling the question of priority among the several judgments. The regular course is, for a master to examine and report on this point, and nothing can be more simple and easy, for he determines by matter of record. Such was the course pursued before Lord Ch. Hardwicke, in the case of Worthy v. Brickhead, (2 Ves. 571.) and *530 "the toaster there went at large into the examination of priorities, because the judgment creditors were all before the court.
With respect to the merits of Gelston’s claim, as set forth in his petition, I think he was entitled to the benefit of the fund. His judgment had not been paid or discharged, nor had he lost the lien .on the moneys resulting from his judgment. He had done nothing under the assignment which ought to prejudice him, or to be deemed a waiver of his judgment; and his priority remained good, notwithstanding the sale of the Brooklyn estate under the order, by consent, of June, 1804. The court of chancery was bound to give his claim its legal priority. If a fund for the payment of debts be created under an order or decree in chancery, and the creditors come in to avail themselves of it, the rule of equity then is, that they shall be paid in pari passu, or upon a footing of equality. But when the law gives priority, equity will not destroy it, and especially where legal assets are created by statute (as the judgment lien was here) they remain so, though the creditors be obliged to go into equity for assistance. (2 Fonb. 403, 404.) The legal priority will be protected and preserved in chancery.
Instead, then, of dismissing his second petition, the court ought to have made provision for the payment of Gelsion’s judgment out of the funds arising from the sales, under the order of June, 1804, in preference to the general " creditors of Sands. The moneys arising on those sales remain subject to the same liens that the lands did before the sales, and the court, by reference to a master, should have ascertained and settled the priority of the liens, and decreed distribution accordingly. There was nothing in the decree of this fcoúrf, in March, 1808, which prevented such dis-, tribution from being made.
I am of opinion, therefore, that the decree of September, 1810, ought so far to be corrected as to allow the appellant the amount of his judgment, to be paid according to its priority, and in preference to the assignees of Sands, out of the proceeds of the sales of the Brooklyn estate. But as the appellant applies by petition only, and does not by bill bring in the other judgment creditors, the master must determine the priority of the liens by the record., and he cannot resort to proof aliunde, unless it be the voluntary eonfession of any prior judgment creditor that his debt is satisfied.
*531 This being the unanimous opinion of the court, the following decree was pronounced in the cause.*
, “ Having heard counsel, as well on the part of the appellant, David Gelston, as on the part of the respondents, George Cod-wise and others, and also on the matter of the cross appeal, and considering the decree of the court of chancery of the 23d of ° . . , September, 1809, is not erroneous in the particulars and tor the reasons in the cross petition of appeal mentioned; it is, therefore, ordered, adjudged and Decreed, that the said cross petition of appeal be dismissed, and the decree complained of be affirmed ; and that the appellants, on the said cross appeal, pay to the respondent, for the costs of such cross appeal, the sum of one hundred dollars.
“ And this court further considering that the moneys arising from the real estate formerly of Comfort Sands, situate in Brooklyn, in the pleadings mentioned, and which are now in the said court of chancery, or may hereafter be brought therein, ought (after, in the first place, reimbursing, paying, and indemnifying the said George Codwise and others, the complainants in the court of chancery, the costs and charges which they have paid, or are or may become liable to pay, in the prosecution of that suit, or which have or may take place therein, according to the order, judgment and decree of this court of the 24th of March, 1808, and the order, judgment, and decree of the court of chancery of the 25th of June founded thereon) to be applied to the payment and satisfaction of the judgment creditors of the said Comfort Sands, whose judgments were docketed previously to the bankruptcy of the said Comfort Sands, according to the priority of the time of docketing, in preference to the other creditors of the said Comfort Sands: It is, therefore, ordered, adjudged and decreed, that the order of the court of chancery of the 12th September, 1810, in the petition of the appeal of the said David Gelston mentioned, be, and the same is hereby reversed: and it is further ordered that the cause be remanded to the court of chancery, to the end that the said court may direct an inquiry what the said complainants, George Codwise and others, have expended and paid, or are or may become liable to expend and pay, as aforesaid; and also what judgments remain open, unsatisfied of record, against the said Comfort Sands, and which were docketed previous to his becoming a bankrupt, and the amount thereof respectively, and the order, in point of time, in which they were docketed, *532 and that the court of chancery, after deducting the costs, charges and expenses already paid by the said George Codwise and others, complainants, or which they are or may become liable to pay as aforesaid, and also the amount due on all the judgments standing open and unsatisfied of record against the said Comfort Sands, and which were docketed prior, in point of time, to the judgment obtained by the said David Gelston, shall cause the residue, if any, to be applied to the satisfaction of the said judgment in favour of the said David Gelston, together with the interest on such judgment.
“ And it is further ordered, that on the inquiry as to the judgments against the said Comfort Sands, docketed previous to the judgment in favour of the said David Gelston, which may be directed by the said court of chancery, the fact of the said prior judgments remaining open and unsatisfied of record, and satisfaction not voluntarily confessed before the master, shall be conclusive against the said David Gelston, as to the amount to be retained,, in preference to the satisfaction of his judgment, and that the record be remitted,” &c.

 March 24, 1812.