DETERMINED IN THE

# FIRST DEPARTMENT,

## AT

## GENERAL TERM,

## October, 1878.

IN THE MATTER OF THE LAST WILL AND TESTAMENT OF JAMES FOSTER, DECEASED, ETC., AND THE PETITION OF MARY E. WHITTELSEY.

*Liability of trustees—for improper investments turned over of his successor—when proceedings by petition allowed.*

Where the resignation of a trustee is accepted and his bond discharged, upon his transferring the trust estate to his successor, such estate consisting of money or of such securities as the law authorises, he is exempt from all liabilities for any loss which subsequently occurs to the fund.

Where a trustee has invested the estate in, and transfers to his successor securities which the law does not recognize as valid investments—*e. g.*, promissory notes —he continues to be responsible for the security of such investments until they become converted into money or legally invested; but, where one of the notes so transferred is subsequently paid by the maker, the former trustee is relieved from all liability therefor, although the amount of such note may never be received by the trust estate.

After a trustee had been discharged, his bond canceled, and the trust funds transferred to his successor, a petition was filed by the *cestui que trust* to set aside his discharge and compel him to pay over the amount of certain of the securities so transferred, on the ground that they were improper investments, and had subsequently proved to be worthless; *held*, that by appearing and proceeding to an investigation upon the merits, without taking the objection that an action and not a petition was the proper remedy for the *cestui que trust*, the objection was waived, and could not be first raised upon an appeal.

The power of a court of equity to proceed by petition, instead of action, considered.

Appeal by Antoinette E. Hoguet, executrix, etc., of Anthony L. Hoguet, deceased, from an order entered in the county of New York confirming the report of Thomas H. Rodman, Esq., referee. This proceeding was founded upon a petition made by Mary E. Whittlesey to vacate an order discharging one Anthony L. Hoguet, a former trustee of the petitioner, and the sureties upon his bond, and to compel him to make good certain of the securities transferred to his successor, which were alleged to have been improper investments for a trustee to make, and which had proved worthless and uncollectable. The referee appointed in the proceeding found, among other things, that Anthony L. Hoguet, in February, 1856, in conjunction with one Getty, as trustees under the will of James Foster, Jr., received the sum of $30,000 in cash, and that the care and management thereof by arrangement between them devolved upon said Hoguet; that in June, 1856, he deposited the whole sum to his credit, as trustee, with the firm of Lahens & Co., commission merchants, of the city of New York, with whom his then firm of Hoguet & Boell had dealings, and to which firm of Lahens & Co. his firm was then indebted between $30,000 and $40,000, being a balance of account between the two firms. At that time Louis E. Lahens, the senior partner of Lahens & Co., was in Europe. He had left his business in charge of his two clerks. On his return, he repudiated the act of his clerks, who had received in his absence the money from Hoguet, in accepting it as a special deposit of a trust fund, and credited the firm of Hoguet & Boell with the amount in their account. This gave rise to a controversy, Hoguet demanding the fund and Lahens refusing to pay it over; and proceedings were commenced to remove Anthony L. Hoguet as trustee, and to compel him to make good and pay over the fund of $30,000, which it was alleged had been lost or misappropriated by him. Lahens and Henry Hoguet, a brother of Anthony L. Hoguet, were the sureties on the bond given by the latter for the faithful performance of his duty as trustee. Lahens & Co. were then, and for several years afterwards, solvent and responsible, though they subsequently became and are totally insolvent. Instead of enforcing his demand, Hoguet entered into the following arrangement: He agreed to resign his trust, and that Edme J. Genet, an attorney

and counsellor at law, of the city of New York, should be appointed in his place, and he agreed with Lahens, that he, Lahens, should give his promissory note for $15,000, in conjunction with one John La Farge, payable in one year, to Getty's order as trustee, that being one-half of the principal of the funds, and the said Henry Hoguet should give Getty two bonds and mortgages, each for $5,000, and the promissary note of Henry Hoguet for $5,000, that being the amount of the balance of the principal of said trust fund, and to pay to said Getty, as trustee, some $223.34 cash as accrued interest on the trust fund. It was further arranged between these parties, that the proceedings instituted for the removal of Anthony L. Hoguet should be discontinued, and that he be allowed to petition to resign his trust. This agreement was carried into effect, and subsequently a report was made by a referee that Edme J. Genet was a proper trustee to be appointed in place of Hoguet, and he had accordingly appointed him; and had taken the bond of John La Farge and L. E. Lahens as his sureties; that it had been proved to him that Anthony L. Hoguet had paid over to the said Getty, his co-trustee, the said principal of $30,000, and $226.43 balance of income. March 6, 1858, such report was confirmed, and Hoguet ordered to be discharged. In fact, the only money paid was $226.43, and the only securities delivered were those above mentioned. The petitioner testified that she had no knowledge of this transaction, and never assented to it. La Farge was abundantly responsible when he gave the note of $15,000, and so continued until his death, which occurred before the note matured. After his death, and after Lahens had failed, a suit having been brought upon it by Getty, as trustee, against La Farge's executors, it was defended on the ground that the note being a joint obligation, their testator's liability ceased at his death. The Court of Appeals sustained the defense, and the debt is apparently worthless. (*Getty* v. *Binsse,* 49 N. Y., 385.) The promissory note of Henry Hoguet for $5,000 was paid, but not to the trustees.

The referee also found as follows : "that Mary Whittelsey, the *cestui que trust*, has derived no income from the said $20,000 of said trust fund since May 1st, 1867, and in my opinion the said Anthony L. Hoguet in his life-time was liable, and that after his

death his estate or his sureties are liable for said $20,000, and the interest thereon from May. 1st, 1867, with annual rests."

From an order confirming the report of the referee this appeal was taken.

*Joshua M. Van Cott*, for the appellant, Antoinette E. Hoguet, executrix. This court, whether as a court of law or equity (and no more as a court of equity than as a court of law), has not jurisdiction to proceed summarily, by motion or petition, to adjudge a pecuniary liability against the personal representative of a discharged and deceased trustee for a *devastavit* alleged to have been committed by him. In respect to infants, lunatics, and in a few other cases (not including such trusts or confidences in personal property as the present, which is a mere personal fund), it was, by force of ancient usage or by statute, exercised summarily on petition. (*Ex parte Salter*, 3 Bro. C. C., 500; *Williamson* v. *Berry*, 8 How. [U. S.], 552–557, 561; *Teal* v. *Woodworth*, 3 Paige, 475; *Ex'rs of Brasher* v. *Van Cortlandt*, 2 Johns. Ch., 245, 401; *In re Bostwick*, 4 Johns. Ch. R., 100; O'Donnell & Brady's Dig. Irish Equity Cases, 196; *In re Fitzgerald*, 2 Scho. & Lefr., 438.) With these special exceptions, it has become a settled principle that the court could proceed only by plenary process—that is to say, by bill or information and subpoena. (*In re Van Wyck*, 1 Barb. Ch. R., 563; *In re Livingston*, 34 N. Y., 568, 569; *Quackenboss* v. *Southwick*, 41 id., 120, 121; *Leggett* v. *Hunter*, 19 id., 445, 459; *Wollard's Trust*, 18 Jur., 1013.) It is only in cases coming strictly within the statutes that the British courts claim power to proceed otherwise than by action. (*Ex parte Brown*, Geo. Cooper's R., 299; *Ex parte Skinner*, 2 Merivale, 457, side paging; *Corporation of Ludlow* v. *Greenhouse*, 1 Bli. P. C. [N. S.], 64, 93; this case is very instructive; *In re Buckley's Trust*, 17 Beavan, 113.) The cases cited in Hill on Trustees, *supra*, arising under post Revolutionary statutes, such as Sir Samuel Romilly's Charities Act (52 Geo. III, Ch. 101); the Irish Encumbered Estates Act (12th and 13th Vict. Ch., 77); The Trustees' Acts (1 Wm. IVth Ch., 10); 10th and 11th Vict. Ch., 96, and 13th Vict. Ch., 60); the Settled Estates Acts (19th and 20th Vict., 120, and 21st and 22d Vict.,

77), show that whether or not a case can be instituted by petition is a jurisdictional question. (See, further, Trustees' Relief Acts, Allen's Will, Kay's R., Appendix, 51 ; Cazneau's Legacy, 2 Kay & Jo s., 249 ; In re Hodge's Settlement, 3 id., 216 ; Thorpe v. The e, 1 id., 439 ; In re Fozard's Trust, 24 Law Jour. [N. S. Ch cery], 441 ; In re Draper's Settlement, 9 Weekly Rep., 805 ; In 2 Fitzgerald, 2 Scho. & Lefr., 441.)

Charles M. Dayton and Albert Cardozo, for the respondent, Mary E. Whittlesey. The petitioner had the right to bring the matter before the court by petition. (Mechanics' Bank, 2 Barb. S. C., 446; Norton's Case, 9 N. Y., 176 ; In the Matter of Livingston, 34 id., 582; 2 R. S., 107, § 27 ; Laws 1847, chap. 280, § 8 ; Le Guer v. Gouverneur, 1 Johns. Ca., 436–499 ; Forest v. Forest, 25 N. Y., 501; Leggat v. Hunter, 19 id., 459.) The Court of Chancery had the right, and it was its practice, when even part of a claim was admitted to be due, to order that part paid, and to enforce it by decree or otherwise. (Courson v. Hamlin, 2 Duer, 513 ; Clarkson v. De Peyster, Hopk., 274 ; Mills v. Hansen, 8 Vesey, 68 ; 1 Barb. Ch. P., 237 ; 3 Daniels Ch. P., 467 ; Brockway v. Copp, 2 Paige Ch. R., 578.)

INGALLS, P. J.:

It is insisted by the counsel for the appellant, that a petition was so far an inappropriate remedy, that even jurisdiction was not acquired by the court, and the proceedings should, therefore, be dismissed, and the party required to seek relief by action. Notwithstanding the able argument submitted by the learned counsel for the appellant, we are not convinced that the proceeding is fatally defective. The parties appeared and investigated the merits without raising this question until an appeal was taken ; under such circumstances the objection should not be regarded with favor. If the court acquired jurisdiction of the person it is sufficient, as there can be no reasonable doubt but that it possessed jurisdiction of the subject-matter. If the party against whom the proceeding was instituted had deemed an action necessary, or that other parties should be represented, he should have promptly applied to the court for such relief; and having omitted

to do so, nothing short of an inexorable rule requiring it should induce the court to dismiss the proceeding after so much time has been occupied and money expended in this controversy. The subject-matter of this investigation is a trust created by will, and in regard to which a court of equity possesses jurisdiction. (*Gott* v. *Cook*, 7 Paige Chy., 521; *Kane* v. *Gott*, 24 Wend., 641.

Any party who is interested in the trust may apply to the court for relief in regard to the fund or the management thereof by the trustee. Such application may be made in any form which the law sanctions. In matters of equitable cognizance, proceeding by petition is as old as jurisprudence, and has been favored rather than discouraged by the courts. It is difficult, if not absolutely impossible, to indicate an unvarying rule by which to determine in equity cases when an action is indispensable, we think it must mainly be left to the sound discretion of the court to be exercised in view of the circumstances of the particular case. In this case we perceive no practical difficulty in determining the questions involved, and settling the rights of the parties without abandoning this proceeding and incurring the delay and expense of an action. The real question to be settled was whether Anthony L. Hoguet had so far violated his duty, in regard to the proper investment of the fund, as to render him liable for the loss which had occurred. It does not follow that his estate is to be excused, because the other trustees may have become liable in consequence of failure to discharge their duty in respect to this trust; nor is it indispensable that their liability be determined in this proceeding. We conclude that this objection should not prevail. (2 Barb. Chy. Prac. [revised], 579; 2 Harrs. Chy., 25; *Codwise* v. *Gelston*, 10 Johns., 507, 521; *Quackenboss* v. *Southwick*, 41 N. Y., 117; *In the Matter of the Mechanics' Bank*, 2 Barb., 446; *In the Matter of the Petition of Livingston*, 34 N. Y., 555; *The People ex rel. Jennys* v. *Brennan*, 3 Hun, 666; *People* v. *Norton*, 9 N. Y., 176; *Sheldon* v. *Fortescue*, 3 Wills., 104; *Fisher* v. *Hepburn*, 48 N. Y., 41.)

The appellant further contends that, upon the merits, the report of the referee should not have been confirmed by the Special Term. James Foster, Jr., died in the year 1854, leaving a last will and testament, by which he gave in trust to Gabriel Mead

and William A. Carter $30,000, the income of which he directed paid to his daughter, Mary E. Foster, now Mary E. Whittelsey, during her natural life, and the principal to be paid, at her decease, to her lawful issue, and in case she left none, to other parties specified in such will. The said Mead and Carter refused to execute the trust and were discharged, and Anthony L. Hoguet and Andrew C. Getty were appointed trustees by the court in January, 1856. Hoguet received the $30,000 in cash, and assumed the exclusive care and control thereof. The facts established upon the hearing, and which were fully discussed by the referee, show a disregard of the rule prescribed by the courts in regard to the investment of trust funds. If a trustee departs from such rule, he does so at his peril, and becomes personally responsible for any loss occasioned thereby. In this case Hoguet received the fund in money, and therefore was not embarrassed by any previous investment, or by any express direction in the will in regard thereto. His duty was clear, and the departure therefrom voluntary. (*King* v. *Talbot*, 40 N. Y., 76; *Ackerman* v. *Emott*, 4 Barb., 626; 2 Story's Eq. Jur., 640, § 1275.) If Hoguet had passed over to his successors, money or such securities as the law required, he could properly claim exemption from liability for any loss which subsequently occurred to the fund. But having delivered such securities as the law did not recognize as a valid investment, he continued responsible for the security of the fund until it became legally invested or *converted into money*. It is not the duty of the court to speculate in regard to what the result would probably have been, if the investments had been such as the law required. The party interested in the fund was not required to investigate all the transactions in regard to its management, with a view to establish which of the trustees had been most in fault. The formal discharge of Anthony L. Hoguet should not have the effect, under the circumstances, to shield him or his estate from liability. It appears that Mary E. Whittelsey, the *cestui que trust*, was not informed in regard to the manner the fund was managed by Anthony L. Hoguet, and she should not be chargeable with the knowledge which the attorney Genet possessed in regard to the matter. (*Mandeville* v. *Reynolds*, 68 N. Y., 529, 540.) Especially so as she is only

entitled to the income of the fund during her natural life. We conclude that the decision of the referee was correct in regard to the portion of the fund included in the mortgages and the note of $15,000. In reference to the note of Henry Hoguet for $5,000, the referee finds that it was delivered with the other securities to Getty, the trustee, and that it was subsequently paid by the maker. We are of opinion that the delivery of such note to Getty under the order of the court, coupled with the actual payment thereof, had the effect to free Anthony L. Hoguet from all liability for the portion of the fund embraced in such note. The subsequent diversion of the note by Getty, or his associate trustee Genet, should not have the effect to charge Anthony L. Hoguet any more than if he had paid over the money, and the same had been lost in consequence of the negligence or misconduct of such trustees. By the payment of the note, the fund, to that extent, became converted into money. It is immaterial to whom such payment was made, as it appears to have been made after the delivery of the note to Getty, and without any connivance on the part of Anthony L. Hoguet. The omission to invest trust funds in the manner required by law charges the trustee, only in case the security which he does take fails to produce the money. In this case no such result followed, as the note was paid. We fail to perceive upon what ground Anthony L. Hoguet or his estate could be made liable for that portion of the fund. The rule adopted by the courts in regard to the investment of trust funds is unquestionably sound, and calculated to produce salutary results; but the doctrine should not be carried so far as to do positive injustice to a trustee in a case where it appears that such omission of duty has not contributed to the injury complained of. We are satisfied that as to the portion of the fund which was embraced in said note of Henry Hoguet, the referee erred in holding the estate of Anthony L. Hoguet liable, and that his report, to that extent, should not have been confirmed. The order of the Special Term should be modified by affirming it in all respects, except in regard to the portion of the fund embraced in the note of Henry Hoguet, as to that it should be reversed. Neither party should have costs of this appeal, as neither wholly prevail.

POTTER, J., concurred.

Present — INGALLS, P. J., and POTTER, J.

Order modified as directed in the opinion, without costs to either party.