BRICE P. WALLING, Respondent, v. GEORGE W. MILLER,
Appellant.

A sale of property made under an execution without leave of the court, while
the property is in the possession of a receiver, is illegal and void, although
the levy was made before the appointment of the receiver.
The lien of the execution is not destroyed by the appointment of the receiver,.
but the rights and interest of all parties in the property are thereafter to be
adjusted by the court making the appointment, and it cannot be taken
out of the possession of the receiver and sold under the execution without
leave of the court.
Where a receiver, duly appointed in an action, in pursuance of the directions
of a judgment regularly obtained therein, sells property in his possession,
as such receiver, he is not a trespasser, but is protected by the judgment, as
are also all persons aiding and assisting him.
This protection extends to the plaintiff in the action wherein the receiver
was appointed, and he is not made a trespasser or wrong-doer by the fact
that he advised the receiver to discharge his duty as such.

(Argued December 16, 1887; decided January 17, 1888.)

APPEAL from judgment of the General Term of the Supreme·
Court in the second judicial department, entered upon an order
made September 14, 1885, which affirmed a judgment in favor
of plaintiff entered upon a verdict and affirmed an order
denying a motion for a new trial.

The nature of the action and the material facts are stated
in the opinion.

M. N. Kane for appellant. The property was bound from
the commencement of the judgment creditor's action, which
was long before execution was issued upon the Vanderoef judg-
ment. (Jeffres v. Cochran, 47 Barb. 551; Clark v. Brockeway,
1 Abb. Ct. App. Dec. 35.) Had notice been given to John W.
Vanderoef upon May twelfth, it would not have rendered this
a valid levy as against third parties, because Vanderoef had
absolutely no possession or control of these buildings at that.
time. (Freeman on Executions, § 260; Carruna v. Cohn, 5
Week. Dig. 78; Bond v. Willet, 1 Abb. Ct. App. Dec. 165;.
Bardon v. Millens, 16 Week. Dig. 58; Roth v. Wells, 29 N. Y.

471; *Rix* v. *Silknitter* [Iowa Sup. Ct.], 25 Alb. L. Jour. 26; *Quackenbush* v. *Henry* [Mich.], 21 id. 26; Benjamin on Sales, § 17.) No valid levy having been made no sale could be made. (*Walker* v. *Henry*, 85 N. Y. 130; *Hathaway* v. *Howell*, 54 id. 97; *Carnrick* v. *Myers*, 14 Barb. 9; *Hackley* v. *Draper*, 4 T. & C. 623.) A levy May twelfth would not have changed the title to the property. It gave the sheriff a lien, but the title still remained in John W. Vanderoef. (*Mumper* v. *Rushmore*, 79 N. Y. 19; *Pierce* v. *Kingsmill*, 25 Barb. 631; *Stimson* v. *Wrigley*, 86 N. Y. 332; *Forth* v. *Pursley*, 82 Ill. 152; *McMaster* v. *McPherson*, 6 N. C. Q. B. [O. S.] 18; 1 Addison on Torts, 322, § 376; *Curtis* v. *Hubbard*, 4 Hill, 437; *People* v. *Hubbard*, 24 Wend. 369, 373; *Isley* v. *Nichols*, 12 Pick. 270; *Suttin* v. *Bennin*, 11 Mod. 50.) The alleged sale of June first was invalid for the reason that at the time the receiver was in possession of the property under the order of the court; the possession and custody of it were in the court itself to abide the final decree to be thereafter rendered in the suit pending. (*Skinner* v. *Maxwell*, 68 N. C. 400; *Robins* v. *Atlantic & Gt. W. R. R.* Co., 66 Penn. St. 160; *Robinson* v. *O. P. R. R. Co.*, 2 Pittsb. 507; *Wiswall* v. *Sampson*, 14 How. [U. S.] 52; *Porter* v. *Kingman*, 126 Mass. 141; *Evelyn* v. *Lewis*, 3 Hare, 472; *Attorney General* v. *St. Cross Hospital*, 18 Beav. 601, 605; *Albany City Bank* v. *Schermerhorn*, 10 Paige, 263, 264; *In the Matter of Merritt*, 5 id. 131; *Noe* v. *Gibson*, 7 id. 513; *Parker* v. *Browning*, 8 id. 388; Willard's Eq. Jur. 334; *Cordot* v. *Bonny*, 63 N. Y. 281; *Kain* v. *Smith*, 82 N. Y. 469; *Rich* v. *Loutrell*, 9 Abb. Pr. 388; *Riggs* v. *Whitney*, 15 id. 388; Kerr on Receivers [Bispham's 2d ed.], 177.) No conversion of this property by Miller was shown in any view of this case. (*Fordham* v. *Smith*, 46 N. Y. 683: 44 How. Pr. 472; *Fischer* v. *Langbein*, 103 N. Y. 84: *Day* v. *Bach*, 87 id. 56; *Palmer* v. *Foley*, 71 id. 106; *Simpson* v. *Hornbeck*, 3 Lans. 53; *Hall* v. *Munger*, 5 id. 100, 109, 113; *Laudt* v. *Hilts*, 19 Barb. 283; *Cannion* v. *Sipples*, 39 Conn. 505; *Watson* v. *Watson*, 9 id. 140; *Hayden* v. *Shed*, 11 Mass. 500; *Belt* v. *Broadbent*, 3 T. R. 183; *Arrex* v.

*Brodhead*, 19 Hun, 269; *Nat. B'k of Oswego* v. *Dunn*, 97 N. Y. 157; *Bullis* v. *Montgomery*, 50 id. 352; *Osgood* v. *Carver*, 43 Conn. 23; *Coats* v. *Darby*, 2 N. Y. 520, 521.)

*W. F. O'Neill* for respondent. The slighest interference with the property of anofher, and claim of dominion over it renders the wrong-doer liable for conversion. (*Davis* v. *Barker*, 5 Den. 92; *Ball* v. *Loomis*, 29 N. Y. 412–417; *Pozzoni* v. *Henderson*, 2 E. D. Smith, 146.) The assumption of dominion over property, if in hostility to the rights of the true owner, amounts in law to a conversion. (*Boyce* v. *Brockway*, 31 N. Y. 490; 6 Barb. 79, 80, 81.) All who aid, command, advise or countenance the commission of a trespass by another, or who approve of it after it is done, are liable, if done for their benefit in the same manner as if they committed the tort with their own hands. (*Judson* v. *Cook*, 11 Barb. 642, 644; *Coats* v. *Darby*, 2 N. Y. 517; *Green* v. *Kennedy*, 46 Barb. 16.)

EARL, J. This action was brought to recover damages for the wrongful conversion of certain buildings situated upon the land of J. W. Utter in Orange county. In February, 1883, the buildings belonged to John W. Vanderoef who was the tenant of Utter under a lease expiring April 1, 1883. On the 26th of February, 1883, he gave his wife Eliza a chattel mortgage payable one day after date, covering these buildings and all the rest of his personal property. Neither Vanderoef nor his wife removed the buildings during the term of the lease. On the 6th of March, 1883, Utter leased the premises upon which the buildings were situated to Miller the defendant, and to Jacob Price for one year from April 1, 1883, and on April fourth they entered into possession of the premises and of the buildings under their lease. Both Miller and Price were judgment creditors of Vanderoef, and on the 17th of April, 1883, they commenced an action in the name of Miller against Vanderoef and his wife to reach Vanderoef's equitable interest in the buildings. In that

action, Vanderoef made default and his wife answered that her chattel mortgage had been satisfied. Thereupon a motion was made for the appointment of a receiver pending the trial of the action, and on May 14, 1883, George W. McElroy was appointed a receiver expressly of these buildings. Upon the same day he filed security and took possession of the property. A final decree was entered in the action September third by which the receiver was directed to sell the buildings, and on the eleventh of September following he sold them, and the purchasers at the sale thereafter took them down and removed them. Afterward this action was brought by the plaintiff against Miller and Price and McElroy, the receiver, and the purchasers of the buildings, claiming that he was the owner of the property and charging the defendants with its conversion. His title was founded upon an alleged sale by virtue of an execution issued upon a judgment against Vanderoef. The judgment was confessed by Vanderoef to his brother James, who assigned it to another brother on the 7th of May, 1883. Thereafter execution was issued on that judgment and it was claimed that a levy was made on the 12th of May, 1883. A sale was had under the execution on the 1st day of June, 1883, at which the property was struck off to the owner of the judgment, who afterward sold the same to this plaintiff.

This action was discontinued as against the receiver and upon the trial the complaint was dismissed as against all the other defendants except Miller, and a verdict was rendered against him.

We will assume, as most favorable to the plaintiff, that these buildings were personal property, and that they did not become a part of the realty upon the termination of Vanderoef's lease. Utter, the landlord, so treated them, and so did Miller and Price, the lessees who succeeded Vanderoef, by seizing and selling them as personal property. The rule of law which would otherwise have attached these buildings to the realty as a part thereof after the expiration of the lease is defeated in its operation by the intention and conduct of the parties

interested.   We will also assume, without determining it, that there was a valid levy upon these buildings as personal property on the 12th day of May, 1883, under the execution issued upon the judgment recovered against Vanderoef, and yet we reach the conclusion that the judgment ought to be reversed for at least two reasons:   *First.*  Two days after the levy, by virtue of the execution issued upon the judgment against the owner of the property, a receiver of the property was appointed. There is no question that the equitable action was regularly commenced, and that the court had jurisdiction to appoint the receiver.   On the same day he took possession of the property and thereafter it was in theory of law in the possession and custody of the court; and the sheriff had no right to interfere with it by virtue of his lien under the execution in his hands.   The lien of the execution was not destroyed by the appointment of a receiver, but the rights and interests of all parties in the property were thereafter to be adjusted by the court which appointed the receiver, and the property could not be taken out of the possession of the receiver and sold upon the execution without leave of the court.   The execution creditor could bring his lien to the attention of the court in the action in which the receiver was appointed, and ask to have the execution satisfied out of the proceeds of the property. But persons having liens upon the property had no right to interfere with its possession by the receiver and, without any application or adjudication of the court, sell and dispose of it,. and thus dissipate it and deprive the court of jurisdiction to administer it.  (*Noe* v. *Gibson*, 7 Paige, 513; *Albany City Bank* v. *Schermerhorn*, 10 id. 263; *Wiswall* v. *Sampson*, 14 How. [U. S.] 52.)  In *Albany City Bank* v. *Schermerhorn* the chancellor, speaking of a case where an execution creditor claimed a prior lien, said :   " If the plaintiffs in the execution had acquired a legal lien, so as to overreach the lien of the complainants in the creditors' bills, they could not get the property out of the hands of the receiver except by an application to the vice-chancellor for an order upon the receiver to

deliver over the proceeds to be applied on the execution." In the case of *Noe* v. *Gibson*, it was held that where property is rightfully in the hands of a receiver it is in the custody of the court, and cannot be distrained upon for rent without permission of the court by whom the receiver was appointed, and that any person who takes the property out of the possession of the receiver, without such permission, after he has notice of the character in which such possession is holden, is guilty of contempt; and that the same principles are applicable to any other interference with the possession of a receiver, sequestrator, committee or custodian who holds the property as the officer of the court of chancery, as his possession is in law the possession of the court itself. The chancellor said in that case: "It is well settled that after a receiver has been appointed and has taken the rightful possession of the property, it is a contempt of court for a third person to attempt to deprive him of that possession by force, or even by a suit or other proceeding against him, without the permission of the court by whom the receiver was appointed. Where the receiver is in possession of property upon which a third person has a claim for rent, the proper course for the landlord is to apply to the court, upon notice to the receiver, for an order that the receiver pay the rent or that the landlord be at liberty to proceed by distress or otherwise as he may be advised." In *Wiswall* v. *Sampson*, it was held that a sale of real estate in the hands of a receiver, under a judgment, pending the equity suit, and while the court was in possession of the estate, without leave of the court, was illegal and void.

Therefore before a legal sale could be made of these buildings upon the execution, application should have been made to the court which appointed the receiver for leave to make the sale. An application might also have been made to the court for payment of the execution out of the proceeds of the sale. But the sale under the execution without leave of the court, while the property was thus in the custody of the court, was wholly illegal and void. Therefore, as the plaintiff's title rests wholly upon the execution sale it fails, and for that

reason he should have been non-suited at the trial. *Second.* The judgment in which the receiver was appointed was regularly obtained. The receiver was regularly appointed and he was directed by the judgment to sell this identical property. Therefore in selling it he was not a trespasser, and all persons aiding and assisting him had the same protection. The defendant did not become a trespasser because he commenced the action and had a receiver appointed; nor did he become a trespasser or wrong-doer by advising the receiver to discharge his duty as such or in aiding him to make the sale which he was bound to make by the judgment. (*Day* v. *Bach*, 87 N. Y. 56; *Bank of Oswego* v. *Dunn*, 97 id. 157.)

We are, therefore, of opinion that the judgment should be reversed and a new trial granted, costs to abide event.

All concur.

Judgment reversed.