[No. 1161.  Decided February 7, 1894.]

THE STATE OF WASHINGTON, *on the relation of Edward M. Hunt and Frederick Mottet*, co-partners, v. THE SUPERIOR COURT OF CHEHALIS COUNTY *et al.*

RECEIVERS — RIGHT TO PROPERTY HELD UNDER ATTACHMENT.

A receiver appointed by the court under an order directing him generally to take possession of the property of an insolvent corporation takes no title to property of the corporation in the actual possession of the sheriff under an attachment lien, when the sheriff and the lienors have not been made parties to the action in which the receiver was appointed.  (DUNBAR, C. J., dissents.)

*Original Application for Prohibition.*

*Greene & Turner*, and *J. C. Cross*, for relators.

*M. J. Cochran*, and *J. B. Bridges*, for respondents.

The opinion of the court was delivered by

HOYT, J.— Only one substantial question is presented by the return of the respondents to the alternative writ of prohibition heretofore issued in this cause, and that is as to the respective rights of the relators, as attaching creditors of a certain corporation, and a duly appointed receiver for said corporation.

The relators obtained a lien upon the property in question by virtue of attachment proceedings, and have maintained such liens by causing the sheriff to retain the actual possession of the property in question from the date of the initiation of such lien.  The receiver was appointed in a suit instituted by a stockholder of the corporation, for the purpose of winding up its affairs.  Such suit was commenced long after the lien of the relators to the specific personal property had attached, and they were not made parties thereto.  Under this state of facts the relators contend that their right to have the sheriff retain possession

of the property and subject it to the payment of their judgment is not affected by the appointment of the receiver.

This question was before this court in the case of *State, ex rel. Machinery Co., v. Superior Court,* 7 Wash. 77 (34 Pac. 430), and, after able argument and careful consideration, a decision in accordance with such contention was reached. The question having been once decided in this court should not be re-opened until it is made affirmatively to appear that such decision was not in accordance with correct legal principles. We have carefully investigated all the authorities cited by the respondents, and the result of such examination has made it unnecessary that we should bring to the aid of our former decision any of the numerous authorities cited in the able brief of the attorney for the relators. The respondents contend that the authorities cited by them establish the doctrine that whenever a receiver is appointed he is entitled to the possession of all the property of the corporation for which he is appointed, regardless of the question as to whether the actual possession of such property is in such corporation or in that of a third person, a stranger to the suit in which such receiver had been appointed.

We are unable to find anything in any of the cases so cited which warrants this contention. The general proposition is laid down in Gluck and Becker on Receivers, Beach on Receivers, High on Receivers, and in the Am. & Eng. Ency. of Law, that a receiver only takes such rights in the property of the corporation as it had at the date of his appointment, or, at most, at the date of the commencement of the action in which the appointment is made; and the author of each of these works cites abundant authority to sustain such general proposition. Among the numerous cases cited by respondents we have been unable to find a single one which goes to the extent of holding that a receiver, without other authority than that of the order ap-

pointing him, had the right to interfere with personal property in the actual possession of third persons under claim of right.

There are some cases which hold that by making such persons parties to the suit in which the receiver was appointed they may be compelled to surrender the property to him and adjudicate their rights in that action; and in some cases the order appointing the receiver has directed him to take possession of certain specifically designated property, and in such cases it has been held that the person holding such property could not question the authority of the receiver under such order.    But none of these cases aid the contention of the respondents.   The order in this case, in general terms, directed the receiver to take the property of the corporation, and required such corporation to surrender possession thereof, but said nothing as to any specific articles or as to the rights or duties of those not parties to the action; hence, under the general rule referred to, the receiver only took such rights as the corporation had; and as the corporation had no right to interfere with the property in question, it must follow that the receiver could not rightfully assert any claim thereto not subject to the lien of relators and the right of the sheriff to retain possession and proceed in the enforcement of the process in his hands.

There are many cases which hold that a receiver once in possession of property cannot be disturbed in such possession, even by one who has a superior lien thereon.   Not only are there many cases which establish this doctrine, but, so far as we know, there is an unbroken line of authority going to that extent.   The reason why the possession of a receiver must not be disturbed is, that it is the possession of the court, and its dignity will not allow any one, without its permission, to interfere with that of which it has possession.

But the research which we have been able to give to the
subject has not brought to our notice a case in which it has
been held that property in the actual possession of a third
person, under claim of right, came into possession of the
court upon the appointment of a receiver in a suit to which
the person in possession of the property was not a party.
The case most relied upon by respondents, and which
comes nearer to sustaining their contention than any other
that has been brought to our attention, is that of *Wiswall
v. Sampson*, 14 How. 52.   An examination of that case
and of the briefs of counsel will show that it went no far-
ther than to establish the well recognized doctrine that a
court will brook no interference with property in the actual
possession of its receiver.   It is contended on the part of
respondents that, in the case just cited, the possession of
which the court speaks in its decision was simply the con-
structive possession in the receiver growing out of the fact
of his appointment.   But it appears clearly from the briefs
of counsel that the property was in the actual possession
of the receiver.   This also appears from the opinion of
the court, as the following quotation will show:

"The receiver was appointed on the 27th June, 1845,
and on the same day Ticknor, who was in possession of
the premises, attorned to him, who held possession until
the sale was made in pursuance of the decree.    .    .    .
At the time, therefore, of this sale, the receiver was in the
possession of the premises, under the decree of the court
of chancery."

Such being the status of the property as to which the
court was speaking in deciding that case, it has little weight
in support of the contention of respondents.   Besides,
there was another reason given by the court for its decis-
ion, aside from that growing out of the actual possession
of the property by the receiver, and that was that the
parties attempting to assert a legal right as against his

title had been brought into the action.    And from what is said by the court, it is probable that the case would have been decided differently if the one claiming the adverse title had not been made a party to the suit in which the receiver had been appointed.    Upon that subject the court speaks as follows:

"We agree, that the person holding the prior legal lien or incumbrance, must have notice, and an opportunity to come in and claim his prior right to the property or inter-est in the fund before his legal right can be affected; and the proper way is by summons or notice upon the order or direction of the court."

In a similar manner, every case cited by respondents can be analyzed and abundant reasons for the decisions found without invoking the harsh rule contended for by respondents, that one in the actual possession of property under claim of legal right may be deprived of such posses-sion without any opportunity to be heard in defense of his rights.    That the affairs of a corporation can be so changed, by the appointment of a receiver at the instance of one of its own stockholders, as to take a legal right from one claiming property adversely to it, without his being brought into court for the purpose of having his right thereto adjudicated, is so contrary to our understanding of what constitutes due process of law that we cannot yield assent to such a doctrine.    It is laid down by the text writers to whom we have referred, that under such circumstances a receiver must resort to an action at law to obtain possession.    The corporation could only assert its rights to the possession of property thus situated in an action at law, and except when aided by statute the re-ceiver can do no more.

In many states there are express statutory provisions which require all those claiming property of a corporation to yield the same to a receiver or assignee when proceed-

.ings for the appointment of such receiver or assignee have
been instituted by or on behalf of such corporation.    But
we have no such statutory provision in this state, and with-
out some aid of this kind we are unable to see any suffi-
cient reason for holding that the appointment of a receiver
should authorize him to take possession, without legal
process, of property in the adverse possession of another
under claim of right.

We are satisfied with what we held in the former case,
and, applying it to the facts in this one, it follows that the
receiver was not justified in interfering with the possession
of the property in controversy, nor with the right of the
sheriff to proceed against the same as required by the pro-
cess in his hands.

The alternative writ must be made perpetual.

ANDERS, SCOTT and STILES, JJ., concur.

DUNBAR, C. J. (*dissenting*).—I am unable to agree with
the conclusion reached by the majority.    I think, in the
first place, the demurrer to the petition should have been
sustained; and, in the second place, the answer of the .re-
ceiver, and the return of the court, conclusively show to
my mind that no injury or damage was threatened to the
petitioners by the court, or the receiver.

The opinion of the majority starts out with the propo-
sition that the receiver only takes such interest in the
property of the corporation as it had at the date of his ap-
pointment, or, at most, at the date of the commencement
of the action in which the appointment was made; and the
case of *State, ex rel. Machinery Co., v. Superior Court*, 7
Wash. 77 (34 Pac. 430), is cited to sustain this proposi-
tion.    The decision of this point was not necessarily in-
volved in the case above referred to, and the opinion
expressed in that case, in my judgment, was wrong, and
not borne out by the authorities, and is not consistent with

the orderly administration of courts of equity in settling insolvent estates.    This question was, however, before this court in the case of *Meeker v. Sprague*, 5 Wash. 242 (31 Pac. 628), and there it was flatly decided that the party having a mortgage lien must foreclose his lien in the court having jurisdiction of the settlement of the insolvent estate, even where the mortgagee alleged that the property upon which he had a first lien would be charged with a greater proportion of the expenses of the receivership than would be just.    In that case all the right that the receiver could take, according to the doctrine announced in the majority opinion in this case, was the right of the equity of redemption, which was all the right that the insolvent corporation had under the law.    It is true that the property involved there was real estate, but the doctrine that the receiver only takes the right to the property that the corporation had at the date of his appointment, if tenable at all, must be applied to all the property.    Nor was there any attempt made in *Meeker v. Sprague, supra*, to distinguish this lien from the lien on personal property, but the decision was based upon the theory that the court would respect the lien, and that it would do exact justice in the premises.

"It cannot for a moment be presumed," said the court in that case, "in aid of the contention of the appellant that the lower court will not do as full and exact justice to each person or corporation claiming a lien upon any of the property of the defendant corporation when presented in such original suit as it would when presented by means of an independent action.    It would be the duty of such court to determine each of the claims presented in said original action by the same rules, and grant to them the same rights, as it would if each of the claimants were a plaintiff in an independent action.    While each of them will be adjudicated in the original action, they will be so adjudicated upon the facts of the particular claim as related to the entire property of the corporation.    And in the adjustment of the expenses incident to such suit, and of the

services of the receiver, the principles of equity will, of course, be applied.    And if any of the liens are upon property over which the receiver has but a nominal control, it will, of course, be the duty of the trial court to see that the holders thereof are protected from having their security, in any material degree, decreased by the costs and expenses incident to the receivership.    And upon the question of the effect of the deed from the corporation to the receiver, it seems to us clear that it can in no manner affect the rights of the appellant.    Such corporation could not convey to the respondent any of his rights, and the court will see to it that in the final adjustment of the rights of all the claimants, the appellant, together with all others like situated, is protected against any diversion, or attempted diversion, of the property upon which he had a first lien, to the payment of subsequent liens, of whatever nature or kind they may be."

The reading of the return of the court to the alternative writ issued in this case would seem to justify the action of the court considered with reference to the opinion of this court just quoted.    A portion of the return is as follows:

"And respondent further says that it was not, nor is it now, doing the things complained of for the purpose and with the intent of destroying and making worthless the said executions of the relators, but that the same should be respected by the said receiver; that the receiver should take and hold the said property subject to whatever right, title and interest in and to the said property the relators had or have by virtue of such executions; that the said receiver should take the said property subject to any and all liens or levies; that the property of the said company should be sold under the direction of this court and managed under its direction, by said receiver, and that any and all moneys coming to the said receiver from or out of the said property should go towards discharging and satisfying the executions of relators, if the court should finally decide that the said executions were valid and prior liens thereon."

The doctrine announced in *Meeker v. Sprague, supra,* is in harmony with the doctrine that the creditor has no

vested right in methods or remedies. In this case the
creditor has a right to make his money out of the property
which is the subject of the lien; but he has no right whatever
in the particular manner in which the money is to be made.
Taking the return of the court to be true, which this court
must do, it is seen that the *method* is all that is contended
for here by the petitioners; and it is elementary that the
writ of prohibition should not issue unless some right is in-
vaded or threatened; and all the right the petitioners have
here is the right to be paid out of the first proceeds of the
sale, which right will not be denied them by a court of
equity. The court will simply direct its receiver to act in
the premises, and this court will not, as it said in *Meeker
v. Sprague, supra*, assume that the property upon which
the first lien exists will be charged with a greater propor-
tion of expenses by reason of its settlement by a court of
equity.  ·

The receiver is appointed for the benefit of all con-
cerned — the judgment creditor, as well as the other credit-
ors, and the corporation itself; and it is the duty of the
court, in the interest of all of the creditors, as well as in the
interest of the corporation, which is deprived by the law of
the right to settle its own estate, to see that the property is
sold in such a way that the best results will be obtained.
So, in this case, the creditor is not threatened with loss of
any right; but the court, merely to prevent harmful con-
fusion and additional costs, which would be the inevitable
result of clashing acts of authority, and for the benefit of
all parties concerned, proposes to prescribe the method
which in its judgment will obtain the best results.

The citation of authorities on this proposition by the
majority I do not think fairly sustains their contention.
The rule laid down by Gluck and Becker on Receivers, p.
130, is as follows:

"Persons having liens upon the property, acquired be-

fore the receiver's appointment, have no right to interfere with its possession by the receiver, and, without any application to or adjudication of the court, sell and dispose of it; and sale of property so made is illegal and void."

Citing *Wiswall v. Sampson*, 14 How. (U. S.) 52, a case of which I will hereafter speak.

It is very plain from an investigation of the authorities that the possession of the receiver referred to is a constructive and not an actual possession, the theory of the law being that when the receiver is appointed to administer upon the estate, the possession immediately vests in him. The same author, on p. 134, says:

"The title to property in the hands of a receiver is not in him, but in those for whose benefit he holds it. Nor, in a legal sense, is the property in his possession. It is in the possession of the court, by him as its officer."

And, again, in § 48:

"The receiver of an insolvent corporation, while, as a general rule, he is to be regarded as the representative of the corporation, asserting its rights, taking its title, and subject to its liabilities, in one respect occupies a broader position, and represents not only the corporation but also the creditors, and when in any proceeding he occupies exclusively the latter status, may do and under some circumstances must do many things which, if his acts were strictly limited to those of a representative of a corporation, he could not do."

It is plain that if he represents the corporation as well as the creditors, he represents all the interests, and must necessarily have possession of all the property.

It is contended that if possession is yielded up to the receiver, the result will be that the lien will be destroyed; and the establishment of the truth of this proposition is really the only logical ground upon which the writ in this case can issue. But I think that the doctrine cannot be established, either on reason or authority; especially it

cannot obtain here where the answer of the court affirmatively shows that the lien will be respected and maintained until the question of priority is adjudicated.

There is in my mind a great deal of fanciful importance attached to this idea of possession. It is true that under our statutes an attachment levy creates a lien, but it is not the object of the lien to create any right of possession in the creditor. The sole object is to keep the property in *statu quo* to prevent the debtor from disposing of it, or any one else obtaining it, until it can be made to respond to the judgment. When the creditor is sure of this result, he has no cause for complaint whatever, and should not be allowed to interfere with the orderly procedure of the court by captious or arbitrary insistence upon any particular method or mode of procedure.

*Wiswall v. Sampson,* 14 How. 52, is a well considered case, which in my opinion sustains the contention of the respondent. It does not very clearly appear in this case whether the court is speaking of the actual or constructive possession of the receiver, but it does appear that the court intended to lay down the broad doctrine that the estate of an insolvent debtor, where a receiver had been appointed, must be administered by direction of the court, and that where a lien had been obtained it was not necessary for its perpetuation that the property be sold by legal process, but that such lien would be protected by the court having jurisdiction of the settlement of the estate; and the court lays down the doctrine that the party having a lien must apply to the court for the protection of his rights.

"The effect of the appointment," says the court, "is not to oust any party of his right to the possession of the property, [and here it must evidently appear that the court was not referring to property in the possession of the receiver at the time he was appointed, but in the possession of the other party,] but merely to retain it for the benefit of the party who may ultimately appear to be entitled to it; and

when the party entitled to the estate has been ascertained, the receiver will be considered *his* receiver, and the master will usually be directed to inquire what encumbrances there are affecting the estate, and into the priorities, respectively." [The italics in the quotation are my own.]

If the receiver is to be considered the *creditor's* receiver, then it is all folly to talk about a creditor's losing his lien by reason of the possession of the receiver.

"When," the court continuing, says, "a receiver has been appointed, his possession is that of the court, and any attempt to disturb it, without the leave of the court first obtained, will be a contempt on the part of the person making it.     This was held in *Angel v. Smith*, 9 Ves. 335, both with respect to receivers and sequestrators.     When, therefore, a party is prejudiced by having a receiver put in his way, the course has either been to give him leave to bring an ejectment, or to permit him to be examined *pro interesse suo*.     And the doctrine that a receiver is not to be disturbed extends even to cases in which he has been appointed expressly, without prejudice to the rights of persons having prior legal or equitable interests.     And the individuals having such prior interests must, if they desire to avail themselves of them, apply to the court either for liberty to bring ejectment, or to be examined *pro interesse suo;* and this, *though their right to the possession is clear.* 1 Cox, 422; 6 Ves. 287."

It would seem that this expression by the supreme court of the United States was sufficiently convincing that it was not attaching any great importance to the question of physical possession.     Further quoting Chancellor KENT, in *Codwise v. Gelston*, 10 Johns. 507, the court says:

"But when the law gives a priority, equity will not destroy it; and especially where legal assets are created by statute, as in case of a judgment lien they remain so, though the creditors be.obliged to go into equity for assistance.     The legal priority will be protected and preserved in chancery."

And still further, showing that the question of posses-

sion was not the basis of this opinion, the court, proceeding, says:

"It has been argued that a sale of the premises, on execution and purchase, occasioned no interference with the possession of the receiver, and hence no contempt of the authority of the court, and that the sale, therefore, in such a case should be upheld. But, conceding the proceedings did not disturb the possession of the receiver, the argument does not meet the objection. The property is a fund in court, to abide the event of the litigation, and to be applied to the payment of. the judgment creditor, who has filed his bill to remove impediments.in the way of his execution. If he has succeeded in establishing his right to the application of any portion of the fund, it is the duty of the court to see that such application is made. And, in order to effect this, the court must administer it independently of any rights acquired by third persons pending the litigation. Otherwise the whole fund may have passed out of its hands before the final decre, and the litigation become fruitless. It is true, in administering the fund, *the court will take care that the rights of prior liens or encumbrances shall not be destroyed;* and will adopt the proper measures, by reference to the master, or otherwise, to ascertain them, and bring them before it. Unless the court be permitted to retain the possession of the fund, thus to administer it, how can it ascertain the interest in the same to which the prosecuting judgment creditor is entitled, and apply it upon his demand?"

There can be but one interpretation of this case, and that is, that the court, under all circumstances, is entitled to the possession of all of the property of the estate; that the receiver as an officer of the court represents not only the creditors, but the estate, and that the whole settlement of the estate, both property that is subject to liens and that which is not, devolves upon the receiver as an officer of the court, and that all priorities will be ascertained and protected by the court.

This was also the doctrine announced by the court of ap-

peals of New York.  *Walling v. Miller*, 108 N. Y. 173 (15
N. E. 65).    This was a case where the property involved
was personal property, and levy was made under execution
on the 12th day of May; two days thereafter a receiver
was appointed.    On the day of his appointment he took
possession of the property.    According to the theory of
the majority, if the sheriff had yielded up the possession
of the property to the respondent the lien would have been
lost, but the court there seemed to be of a different opin-
ion, for it says:

"The lien of the execution was not destroyed by the ap-
pointment of a receiver, but the rights and interests of all
parties in the property were thereafter to be adjusted by
the court which appointed the receiver, and the property
could not be taken out of the possession of the receiver
and sold upon the execution without leave of the court.
The execution creditor could bring his lien to the attention
of the court in the action in which the receiver was ap-
pointed, and ask to have the execution satisfied out of the
proceeds of the property.    But persons having liens upon
the property had no right to interfere with its possession
by the receiver and, without any application or adjudica-
tion of the court, sell and dispose of it, and thus dissipate
it and deprive the court of jurisdiction to administer it."

So that it will be seen that the court, instead of holding
that the yielding up of the possession to the receiver would
destroy the lien, hold exactly the reverse, viz., that the
creditor had no right to retain the possession, thus interfer-
ing with the possession of the receiver, but by yielding up
to the receiver, the lien of the execution would be pro-
tected.    In this case the court went so far as to hold a sale
of the property made under an execution void, where the
levy was made prior to the appointment of the receiver.

But that is just what the petitioners in this case are
striving to do, and what this court has said, by the major-
ity opinion, they have a right to do, viz., to interfere with

the possession of the property by the receiver, and sell and dispose of it without any application by the court.

"When a party is prejudiced by having a receiver put in his way, the course has either been, to give him leave to bring an ejectment, or to permit him to be examined *pro interesse suo*. The rule that the possession of a receiver is not to be disturbed extends even to cases in which he has been appointed expressly *without prejudice* to the rights of persons having prior estates; and the individuals having such prior estates must, if they wish to avail themselves of them, apply to the court either for liberty to bring an ejectment, or to be examined *pro interesse suo;* and this although their right to take possession is clear." 3 Daniels, Chanc. Pl. & Pr. (Perkins' ed.), p. 2057.

That author states that the same rule applies where an estate has been sequestered. Turning to p. 1314, we find the rule laid down thus:

"The proper course to be pursued by any person who claims title to an estate or to property sequestered, whether by mortgage or judgment, lease or otherwise, or who has a title paramount to the sequestration, is to apply to the court to direct the plaintiff to exhibit interrogatories before one of the masters, in order that the party applying may be examined as to his title to the estate. . . . The mode of proceeding is the same where the property is in the possession of a receiver. 6 Ves. 287. . . . An order for the examination of a party *pro interesse suo* may be obtained, as a matter of course, by the party claiming, but it cannot be granted till after the sequestrators have made a return, because, till then, it cannot appear to the court what is sequestered." *Id.*

The whole theory of the law, and of the authorities, simply is, that a court of equity which has jurisdiction of the settlement of the estate will protect the liens and priorities of every kind when they are brought to its attention, but that it will do it in the manner best calculated to preserve the interests of all parties concerned. And this doctrine is expressed very concisely in *Glines v. Supreme*

*Sitting, Order of Iron Hall*, 21 N. Y. Supp. 736, where it was decided that the fact that one, before the appointment of a receiver, levies an attachment upon certain funds does not give him a preference enforceable generally against the receiver as to the judgment obtained, but only a preference in the funds themselves.

A recent case, cited from the supreme court of Texas, (*Ellis v. Vernon Ice, Light & Water Co.*, 4 Tex. Civ. App. 66, 23 S. W. 860), very fully and forcibly sustains the respondent's contention. The court there said:

"It is well established, we think, that, after property has been placed in the hands of the receiver, it is not subject to levy and sale under execution. Being in the custody of the law, through the appointment of a receiver by a court of competent jurisdiction, it cannot be interfered with by process from another court. A party having a claim upon it must intervene in the court of the receivership, and in the case in which the receiver has been appointed, and establish his right in that tribunal, or must obtain leave of that court to bring an independent action. But the question here is, can the sheriff, who has made a levy upon real estate before the appointment of a receiver over it, proceed to sell, and pass the title, after the receiver has been appointed?"

The very statement of this case shows that it is the constructive possession of the receiver that the court is talking about, and that his possession is presumed to follow his appointment.

After reviewing some cases where it was held, as the majority hold in this case, that the receiver only took such title as was conveyed to the receiver by the deed of the party over whose property he was appointed, and that this conveyance passed the property subject to the lien of the judgment under which it was sold, and that, therefore, the purchaser at execution sale took the superior title, the court sums up as follows:

"However that may be, we think *Wiswall v. Sampson*

lays down a doctrine that is founded upon good reason and sound policy. To permit the control of a receiver to be interfered with by virtue of process from another court would be a practice fraught with injustice, and productive of confusion; and that remark applies with especial force to the receivers of insolvent corporations. After all the assets of a corporation have been taken from the hands of its managers, and placed under the control of a receiver, is it just to allow the property to be sold under execution? The court, having deprived the corporation of the power of paying the debt and of avoiding the sale, should, in the interest of all concerned, protect its property from the sacrifice. The receivership does not destroy any liens that may have been acquired before the appointment, but the remedy for their enforcement should· be sought in the court in which the whole estate is being administered."

In view of the logic of this case, and of the others which we have cited, it must be seen that the question of actual physical possession cuts no figure whatever, but that the broad and equitable doctrine is, that the interest of the insolvent corporation, the interest of the unsecured creditors and the interest of the attaching creditors must all be taken into consideration, giving due consideration to the rights of priority, and equitably protected by the court administering upon the estate; and that it is not the policy of the law, and that no good reasons can be given for the division of this settlement into the hands of different tribunals or officers; and in the case at bar all the interest that the petitioners can have is the interest in the *fund* which is to be obtained from the sale of the property upon which they have a lien, and that the procedure or manner of obtaining that fund and of applying it can be safely entrusted to the discretion of the court.

The writ should be denied.