[No. 2354.]

THE PEOPLE FOR THE USE OF KENFIELD. v. FINCH ET AL.

1.  Pleading—Executions—Contradiction of Return.

In an action against a sheriff and the sureties on his official bond for damages sustained by plaintiff by reason of an alleged false return upon an execution, a demurrer should be sustained to a defense which shows upon its face that it involves a contradiction of the sheriff's return upon the execution, as evidence would not be admissible to support such defense.

2.  Pleading—Executions—Issuance to Different Counties at One Time.

In an action against a sheriff and the sureties on his official

bond, for damages sustained by plaintiff, by an alleged false return upon an execution, an answer which alleges as a defense the issuance of two executions on the same day to different counties, states no defense to the action, as, under section 2537 Mills' Ann. Stats., executions may issue on a judgment to different counties at the same time.

3.  Pleading—Executions—Receivers.

In an action against a sheriff and the sureties on his official bond, for damages sustained by plaintiff, by an alleged false return of an execution wherein a levy of the execution on personal property of the execution debtor was alleged, and that subsequently the sheriff falsely returned the execution, no property found, a defense alleging the appointment of a receiver of the property of the execution defendant on a date subsequent to the alleged levy, states no defense to the action.

*Appeal from the District Court of Las Animas County.*

Mr. JOHN A. RUSH, for appellant.

Mr. JAMES McKEOUGH, Jr., and Mr. A. J. ABBOTT, for appellees.

MAXWELL, J.

Action against Finch, as sheriff, and other appellees, as sureties, on the official bond of Finch, for damages alleged to have been sustained by beneficiary appellant, by reason of an alleged false return upon an execution. Upon motion, judgment on the pleadings was rendered against appellant and action dismissed at her costs, from which judgment this appeal.

Omitting averments immaterial to a decision of the questions involved, the complaint alleged, that May 3, 1897, an execution against the property of The Consolidated Fuel Company was issued out of the county court of Arapahoe county, directed and delivered to Finch, as sheriff, whereby he was commanded to make the sum of $610.65 and costs; that during the life of the execution, by virtue thereof,

Finch levied upon the property of The Consolidated Fuel Company of the value of $1,000.00; that September 11, 1897, Finch falsely returned upon such execution that he could not find property of The Consolidated Fuel Company subject to levy and sale; that by reason of the premises the plaintiff was deprived of making the money; that The Consolidated Fuel Company is wholly insolvent and became so since the alleged levy.

The answer admits the receipt of the execution, denies the alleged levy, admits the return made on the execution in the following terms:

"State of Colorado, County of Arapahoe: I return the within writ this 11th day of September, 1897, for the reason that I can find no property of the defendant subject to levy and sale.

D. D. FINCH,
Sheriff of Las Animas County, Colo.
By JOHN ROOSA, Under-Sheriff."

Alleges the truth thereof and denies any damages to plaintiff by any act of defendant.

A second defense alleges the receipt, by the under-sheriff, of the execution, May 4, 1897, at 12:48 p. m., at the hands of plaintiff's attorney; a demand, by the under-sheriff, of an indemnity bond and a statement by him to plaintiff's attorney that the writ would not be executed until the sheriff was protected by good and sufficient bond of indemnity and legal fees were advanced; that plaintiff's attorney agreed that plaintiff would furnish the necessary bond of indemnity and advance costs before any action need be taken by the sheriff under the execution; that nothing was heard from plaintiff or her attorney, as to making any levy, until May 14, 1897, at which time a letter was received from plaintiff's attorney instructing, that a certificate of levy be filed on certain real estate alleged to belong to The Consoli-

dated Fuel Company; that May 15, 1897, a certificate of levy on the real estate was filed as directed; that June 3, 1897, the sheriff received a letter from plaintiff's attorney containing the following request: "You will please proceed to advertise the remainder of the property taken on execution, for sale, and advise me of the time set for the sale of the same"; that no levy was ever made, except upon the land as before stated; that plaintiff did not furnish bond of indemnity or advance the costs; that the execution was returned September 11, 1897, in terms as above stated; that November 21, 1897, the sheriff received a check for $12.00 as advance costs for advertising and selling the property which plaintiff's attorney claimed to have been levied upon, which check was returned to plaintiff's attorney and he was advised of the return of the execution.

A third defense alleged, that May 3, 1897, two executions were issued out of the county court of Arapahoe county upon the judgment in favor of plaintiff against The Consolidated Fuel Company, one of which was directed and delivered to the sheriff of Arapahoe county, and the other to the defendant sheriff; that the sheriff of Arapahoe county proceeded under his execution, levied upon and sold property of The Consolidated Fuel Company.

A fourth defense alleged that May 13, 1897, the district court of Arapahoe county appointed a receiver for The Consolidated Fuel Company and ordered the receiver to take charge of all property in the possession of the company; that by reason of such appointment all property of The Consolidated Fuel Company was in the custody of the law and not subject to levy and sale under execution at the time of the return.

A motion to strike out as irrelevant, immaterial

and insufficient, the second, third and fourth defenses, was overruled and exceptions saved.

A replication was filed, to which a demurrer was interposed, which demurrer plaintiff requested should be carried back to the second, third and fourth defenses set up in the answer.

This request was denied, the demurrer withdrawn and the motion to strike out portions of the replication sustained.

Exception was saved to this ruling.

An amended replication denied the demand for an indemnity bond and prepayment of fees; denied that the attorney for plaintiff, or plaintiff, agreed to furnish such bond and prepay costs, or agreed that plaintiff would furnish such bond and advance costs before any action need be taken by the sheriff; admitted that two executions were issued as alleged in the answer, but alleged that the one issued to appellee was issued first; admitted substantially the allegations of the answer as to the appointment of a receiver for The Consolidated Fuel Company, but avers that such appointment was without notice to plaintiff and that plaintiff was not a party to such suit.

Did the facts pleaded in the second, third and fourth defenses constitute a defense to the cause of action alleged in the complaint?

As to the second defense: *Bishop v. Poundstone,* 11 Colo. App. 73, was an action against a constable and his sureties, upon his official bond, for damages by reason of the unauthorized release by the constable of property levied upon under writs of attachment. The constable's return on the writs was, that he had levied upon the property and afterwards released it. At the trial the constable was permitted to testify in contradiction of his return upon the attachment writs. The court said:

"The officer was concluded by his returns, as

were also the sureties on his bond, and the evidence was inadmissible. An incorrect return may be amended so as to show the facts, but the amendment must be made in the cause in which the writ issued, and, when made, it becomes the return. Except upon application to vacate or amend in the court having jurisdiction of the writ, the incorrectness of the return cannot be shown by the officer or by the parties or privies to the suit.—Freeman on Executions, §§ 365, 366. If the return of an officer did not, as against himself and all parties connected with the litigation, import absolute verity, the records of the courts would be unreliable, and the administration of justice involved in uncertainty and confusion.''

The return upon the execution, as shown by the answer herein, was *nulla bona.*

The second defense involved a contradiction of the return, evidence of which would be inadmissible under the above authority, and the demurrer to this defense should have been sustained.

As to the third defense, Mills' Ann. Stats., sec. 2537, provides:

''It shall be lawful for the party in whose favor any judgment as aforesaid may be obtained, to have execution, in the usual form, directed to any county in this state, against the goods, chattels, lands and tenements of such party defendant, or upon his body when the same is authorized by law.''

''If there is authority for the issuing of a writ to a county other than that in which the judgment was recovered, the remedies to issue the writ to the different counties are concurrent, and hence a writ to each of the counties may properly issue or be in existence at the same time.''—Freeman on Executions, § 30, and cases there cited.

The conclusion is, that the issuance of two exe-

cutions on the same day to different counties is not a defense to this action.

As to the fourth defense: An execution becomes a lien upon the personal property of the judgment debtor at the time the writ is delivered to the officer, and for the better manifestation of the time, the officer is required to indorse upon the back of the writ the hour, day of the month and year when he received the same.—Mills' Ann. Stats., section 2538.

When a writ of execution is issued from the district court of one county to the sheriff of another, and levied upon the real estate of the judgment debtor in the latter county, it is made the duty of the officer making such levy to make and file in the recorder's office of the county where the real estate is situated, a certificate of levy, and until this is done the lien does not attach.—Mills' Ann. Stats., sections 2583, 2585.

The certificate of levy on the real estate having been filed in the office of the recorder, two days subsequent to the appointment of the receiver, no lien was acquired upon the real estate as against the receiver.

"After the appointment of a receiver and the taking possession of the property by him, there is a suspension of the right to obtain priority out of the property by voluntary conveyance, or by assignment, attachment, or other process."—23 Am. and Eng. Ency. of Law (2d ed.), 1043.

It is well settled that the appointment of a receiver does not operate to divest liens previously acquired on the property of the debtor, by other creditors acting in good faith.

Appellees concede this proposition, but contend that the appointment of a receiver suspended the remedy of the judgment creditor under the writ of execution; that he must proceed in the court appoint-

ing the receiver to maintain his claim of priority
upon the property levied upon; that the pleadings in
this case show, beyond cavil, that at the time the
return was made, the property of The Consolidated
Fuel Company was in the hands of a receiver; there-
fore, the sheriff could not sell the property, and even
if the sale had been made, such sale would have been
void.

It is apparent from the pleadings that the levy
in issue, if made, was made upon the personal prop-
erty of the judgment debtor prior to the appointment
of the receiver, to wit, May 4, 1897.

In support of the position taken by appellees the
following authorities are cited: *Walling v. Miller*,
108 N. Y. 173, 2 Am. State Reps. 400; *Wiswall v.
Samson*, 14th Howard, 52; *Ellis v. Water Co.*, 86
Texas 109, 23 S. W. 860; Freeman on Executions,
§ 129.

The rule announced in all of the above authori-
ties is thus stated by Mr. Freeman in his work on
Executions, § 129:

"It is very clear that all property in the custody
of the law is not subject to any seizure or interference
by officers acting under writs of execution; but some
difficulty may be experienced in determining when
property is so within the custody of the law as to be
shielded by this rule. When a court of equity has
acted by taking property into its possession by the
appointment of a receiver, such property, whether
real or personal, is clearly in *custodia legis*. The
whole purpose of the suit might be defeated if an
officer could wrest the property from the agent of
the court, and sell it by virtue of a writ against one
of the contending parties. Such property is not sub-
ject to execution."

In *Walling v. Miller, supra*, the court said:
"Two days after the levy by virtue of the execu-

tion issued upon the judgment against the owner of the property, a receiver for the property was appointed. There is no question that the equitable action was regularly commenced and the court had jurisdiction to appoint the receiver. On the same day he took possession of the property, and thereafter it was, in theory of law, in the possession and custody of the court, and the sheriff had no right to interfere with it by virtue of his lien under the execution in his hands."

The property involved was personal property.

In *Wiswall v. Samson, supra,* in the opinion of Justice Nelson, is this statement:

"At the time, therefore, of this sale, the receiver was in the possession of the premises under the decree of the court of chancery—in other words, the possession and custody of them were in the court of chancery itself (as the court is deemed the landlord) to abide the final decree to be thereafter rendered in the suit pending."

In this case the property was real estate.

In *Ellis v. Water Co., supra,* Ellis claimed title to lots upon which the water works were situated, by virtue of a judgment, execution, and levy made before the appointment of a receiver, and a constable's sale by virtue of such levy, made after the appointment. The court gave judgment against him upon this claim. It is apparent from the opinion that, at the time of the sale, the property was in the possession of the court through its receiver.

In all of the above cases *possession* was in the receiver at the time of the attempted sale by the officer.

In the case under consideration the averment of the complaint is, that the sheriff, during the life of the execution, levied upon property of The Consolidated Fuel Company of the value of $1,000.00.

It is apparent from the pleadings that this levy, if made, was made upon personal property several days before the appointment of the receiver. A levy, under an execution upon personal property, is made by the officer having the writ seizing the property and taking it into his possession. If the levy was made, the officer had possession of the property at the time of the appointment of the receiver, and such property was not in the possession of The Consolidated Fuel Company at the date of the appointment of the receiver, and did not pass thereby to the receiver.

No authority has been cited, and diligent investigation has failed to discover any, which holds that the possession of personal property by an officer under an execution is divested by the appointment of a receiver in a suit to which the judgment creditors were not parties.

The supreme court of Washington has held, that when creditors of a corporation have attached its property, and maintained their lien by the actual possession of the sheriff, a receiver appointed in a suit by a stockholder, to which the attachment creditors were not parties, has no right to possession of the attached property, but the sheriff must keep and dispose of it under his writ.—*State v. Superior Court,* 7 Wash. 77, 34 Pac. 430; *State v. Superior Court,* 8 Wash. 210, 35 Pac. 1087.

"In considering the nature of the title to the debtor's property and estate, which is acquired by a receiver appointed in behalf of judgment creditors, the first principle to be observed is, that the appointment of the receiver does not operate to divest liens previously acquired on the property of the debtor by other creditors acting in good faith. The appointment is regarded as being made subject to such rights and liens as may have been previously acquired by other judgment creditors who will not be divested

of their liens by virtue of the subsequent receivership. * * * If at the time of the receiver's appointment the property is in possession of the sheriff, under writs of attachment levied in behalf of attaching creditors, the receiver's title and right to possession are subordinated to those of such attaching creditors, who may, when necessary, be protected by a writ of prohibition to prevent the court from interfering with their possession."—High on Receivers, § 440.

In *Pease v. Smith,* 63 Ill. App. 411, a writ of execution and writs of attachment had been levied upon real and personal property of a corporation before the appointment of a receiver; the sheriff was holding the property under the writs when the receiver was appointed. Upon motion, which the sheriff resisted, the court ordered the sheriff to turn over the property to the receiver and enjoined him from selling under the writs of execution and attachment. Held: "The order is wrong. The levies not only gave the plaintiff in the execution and the plaintiff in the attachments, if they maintained them, a prior right to the proceeds of the property, but they gave to the sheriff the prior right to the possession of the personal property levied upon."

If the appointment of the receiver was subsequent to a valid levy by the sheriff (under the allegations of the complaint, a valid levy is presumed), the receiver took, subject to the rights acquired by such levy, among which is the right of possession of the property levied upon, and the right to proceed under the writ to sell the property in satisfaction of the judgment.

The conclusion is, that the fourth defense, as alleged and admitted by the replication, is not good.

The answer presented the issue: Was there a levy as alleged in the complaint?

This issue should have been tried, and the court erred in granting the motion for judgment on the pleadings, for which error the judgment will be reversed and the cause remanded.

*Reversed.*

GUNTER, J., not participating.