No. 17,648.

The Premier Steel Co. et al. *v.* The McElwaine-Richards Co.

Mechanic's Lien.—*Upon Buildings and Land Constituting a Single Plant.*—A single lien may be had upon all the buildings and land constituting a single plant, for materials used in an improvement relating to all the buildings without specifying the particular buildings upon which the separate portions of the materials were furnished.

The Premier Steel Co. *et al. v.* McElwaine-Richards Co.

SAME.—*Time of Filing Lien.—Material Furnished to Several Buildings Constituting a Single Plant.*—Notice of a mechanic's lien is in time, if filed within sixty days after furnishing the last of several lots of material ordered and furnished at different times, where they are all supplied under one contract and used in the repair of several buildings constituting one manufacturing plant.

SAME.—*Foreclosure on Property in Hands of a Receiver.*—The permission of a court which has appointed a receiver over property to make him a party defendant to an action in another court to foreclose a mechanic's lien which existed on the property at the time of his appointment is not a relinquishment of control of the property which authorizes a judgment by such other court directing a public sale of the property by the sheriff with clear title to the purchaser.

From the Marion Superior Court.

*Ayres & Jones* and *Elliott & Elliott*, for appellants.

*H. J. Milligan*, for appellee.

HACKNEY, C. J.—This was an action by the appellee, The McElwaine-Richards Company, against the appellants, The Premier Steel Company, John E. McGettigan, receiver for that company, and others, and its object was to enforce a materialman's lien against the property of said Premier Steel Company. Special findings, with conclusions of law, and a motion to modify the judgment present the questions here assigned on behalf of the appellant. The facts so specially found were that the appellant, The Premier Steel Company, had been engaged in the manufacture of steel blooms, billets, and railroad iron, and had been experimenting in various methods of making steel until May 6, 1893, when McGettigan was appointed receiver; that said company's business was conducted in "one Bessemer mill; one open hearth mill; one machine shop; one foundry; one old iron rail mill; hydraulic pump, etc., and one steel mill," all upon real estate owned by said company, held within one in-

closure without division with relation to the several buildings; that the buildings thereon were connected by railroad tracks, gas and steam pipes, were lighted by the same electric plant and were all, excepting one, used by said company in its said business; that the building so excepted was leased to the Indiana Steel Company, but was connected to and with another of said buildings by a continuous roof which covered both buildings; that said real estate, including said buildings, was intended for an entire and general plant. In 1892 said company was engaged in making extensive improvements upon said real estate, and notified appellee that it would need therein a large amount of steam, gas and water pipes, materials appellee was then engaged in selling, and that as it should order from time to time, appellee should supply such materials at the best prices, which appellee agreed to do. "In October, 1892, and continuing thereafter until the appointment of said receiver appellee furnished said company, upon its orders from time to time, material, each being a separate order, for construction, erection and repairing of said plant and all the buildings on said real estate, to the amount and value of $7,716.66, upon which there was paid by said company $4,220.63, leaving unpaid at the commencement of this suit $3,496.03, which is still unpaid and was due on May 6, 1893. The material furnished by the appellee was for the use, benefit and betterment of all said property as a whole, and all of said material was used in said construction, erection and repairs aforesaid, except material to the amount and value of $212.00. "That the material which went into each particular mill or building cannot be separated and identified, the larger portion of it being gas pipe, which was placed under ground connecting and ramifying all the

buildings." On the 12th day of May, 1893, notice of lien was filed with the proper recorder, which notice included lots owned by said company, but not within said enclosure and not covered by said buildings. It is found that $250.00 was a reasonable attorney's fee in this cause, and it was further found that the court appointing said receiver "granted appellee the right to join said McGettigan, receiver, as defendant in this cause." As conclusions of law upon such facts the court stated that there was due appellee $3,562.00 of principal and interest and $250.00 as attorney's fees, for which two sums, less $212.00, appellee was entitled to a lien upon said real estate so included within said inclosure; and "4, that plaintiff is entitled to have said lien foreclosed and the real estate sold without relief from valuation or appraisement laws to pay said judgment for $3,600.00, interest and costs."

Judgment was rendered for appellee extending a lien upon said real estate and upon "all buildings, improvements, mills, shops, engines, boilers, machinery, furnaces, tools, implements, fixtures, rights-of-way, franchises, railroads, railroad tracks, switches, side tracks, appendages and appurtenances, in, upon, or belonging to or connected with said real estate." The sale of said property was ordered, with directions to apply the proceeds, 1st, to the costs in this case, and of the sale; 2d, appellee's judgment with interest; 3d, balance returned into court. It was also declared that "The purchaser at said sale shall take, as against the parties to this action, a clear title to said real estate."

It is first urged that, though the materials supplied may have been used in the repairs and improvements of the company's buildings, it was essential to the maintenance of a lien that they should have been supplied for the purpose of being so used. That is to say, that the appellee supplied them, at the time contem-

plating the use made of them. This fact is certainly well found by the court. As will be seen the object of the purchase was stated before materials were furnished, and *appellee furnished said company, upon its orders from time to time, material, each being a separate order, for construction, erection and repairing said plant, and all the buildings thereon.*

It is next claimed that the conclusions of law were "erroneous for the reason that it is not shown for what buildings the materials were furnished, nor in what buildings they were used, while it is shown that several of the buildings were separate and independent, and yet the lien was taken, not only on all the buildings, but also on vacant lots across the street." While the notice of lien described other lots than those covered by the plant, the lien as adjudged by the court did not include such lots. It is not claimed for appellants that to include in the notice of such lien more land than the lien could be maintained upon would vitiate the lien, and we observe no good reason in such a claim. But that the lien was extended to all of the buildings raises a question of greater moment. The following is quoted, by counsel, from Jones on Liens, sections 1310, 1311, as stating the correct rule: "Where materials are furnished for one or more of several buildings upon a large tract of land, used together in the general business of a manufacturing firm or corporation, a mechanics' lien must be filed against the particular building or buildings only to which the materials were supplied and the lots and curtilages appurtenant thereto; but not against the entire premises, including the old buildings as well as the new."

We have no occasion to discuss here the rule with reference to the improvement of one of a number of buildings upon a large tract of land, as the repairs of

a coal dump situated upon several hundred acres of mining land. Here we have material supplied under one contract, though at various times and upon separate orders, for the improvement of several buildings erected upon a small tract within the city of Indianapolis, the description of which we have omitted for the sake of brevity. The improvement related to all of the buildings; "connecting and ramifying all the buildings." The buildings were erected as parts of a single plant, and, though one of them was occupied by a tenant company, that building was, in its construction, connected with, or a part of, another of the buildings, and the ground was not divided with reference to the several buildings. The author from whom the above quotation is taken has another statement of the rule which has application to the question now in hand : "Where labor is performed or materials furnished under one contract upon several buildings, all situate upon one lot of land belonging to the contracting owner, the lien attaches to all the land for the whole value of the labor performed, and it is immaterial whether the contract specifies one sum for all work or separate amounts for each building." Section 1313. Again it is said: "Under a contract to erect two or more houses for an entire sum, though situate upon different lots, the lien is upon all the buildings and lots, and not upon each separately." Section 1317. In *Phillips* v. *Gilbert*, 101 U. S. 721, it was insisted that the lien was void because it included six houses upon several lots. It was there said: "We think there is nothing in the objection. The contract was one and related to the row as an entirety, and not to the particular buildings separately. The whole was a building, within the meaning of the law, from having been united by the parties in one contract as one general piece of work."

In *Hall* v. *Sheehan*, 69 N. Y. 618, it was held that materials furnished indiscriminately in the erection of several contiguous buildings may, for the purpose of a mechanic's lien, be regarded as a single building and that one notice covering all will support such a lien. Of the same effect generally are *St. Louis National Stockyards* v. *O'Reilly*, 85 Ill. 457; *Choteau* v. *Thompson*, 2 Ohio St. 114; *Hill* v. *LaCrosse R. R. Co.*, 11 Wis. 223; *Doolittle* v. *Plenz*, 16 Neb. 153; *Brabazon* v. *Allen*, 41 Conn. 361; *Crawford* v. *Anderson*, 129 Ind. 117. The statute, R. S. 1894, section 7255, authorizes a lien "separately or jointly" upon the various structures repaired "and on the interests of the owner of the lot or land on which it stands, or with which it is connected." The reason distinguishing joint and several liens is given in Phillips on Mechanics' Liens, section 376, and is quoted in *McGrew* v. *McCarty*, 78 Ind. 496: "If the work be done or materials are furnished upon distinct premises, the lien must be against each of the several premises, according to the value of the work and materials incorporated in each, and not against both for the aggregate amount. The reason a joint claim may be sustained against several houses put up at the same time, without an interval between them, is, that they may be considered as one building, and, consequently, as an integer or unit which may be covered by one claim," etc.

It is objected also that the findings having disclosed the furnishing of materials upon separate orders, beginning in October, 1892, and closing in May, 1893, "which constituted independent contracts, yet the notice attempted to include all and was not filed until May 12, 1893, much more than sixty days after the materials had been furnished under most of the con-

tracts." The error in this contention is in construing the facts found as disclosing a separate contract for each order of material. We think it clear, from the special finding, that the contract was made in October, for the materials to be supplied from time to time as needed in making the repairs and improvements, the making of which occupied the period between October and May 6, and the lien having been filed May 12, was within the time required by the statute. If each order and delivery of materials during the progress of an improvement constituted a separate contract and required a separate lien, it will be readily seen that instead of providing a practical, simple, and efficient method of security to the laborer and materialman, as the statute certainly intends, a complication would arise requiring many liens or the delivery of all materials at one time or the performance of all labor by continuous and uninterrupted service.

The appellants insist, finally, that the trial court erred in overruling their several motions to modify the judgment directing the sale of the real estate and adjudging that the purchaser take a clear title. This question rests upon the proposition that by the receivership the property was *in custodia legis,* and that a court, other than that in which the receivership is pending, has no authority to deprive the court having custody of its possession. That this proposition is correct there can be no doubt whatever, but counsel have been unable to find authority on either side of the question as to whether the court in custody surrenders its possession and submits to a decree and sale by granting the lienor permission to sue the receiver. The reason that permission is required doubtless is that the court's officer may not be involved in constant and expensive litigation, and that the court's possession may not be placed in peril by the exercise

of conflicting jurisdictions. The end sought by the rule is not only the avoidance of conflict in the jurisdiction of the courts, but the preservation of the interests of creditors and debtors. These interests have been entrusted to the court of equity, which affords a more comprehensive and perfect system of justice than the court of law, in order that all may be guarded and protected, each with reference to every other. If the property in question should be sold upon the judgment in this case, the sale would be by public outcry, a method often not attended by results so satisfactory, and upon the wisdom and discretion of the sheriff rather than of the chancellor, who may approve or disapprove the receiver's sale. If the right of the lower court was to direct the sale, by its own officer and upon execution as in other instances, that right would be in utter disregard of the condition of the estate as to the ability of the receiver to realize by certificates, rentals or other means, permitted by the court in possession, sums sufficient to pay the appellee's claim and extinguish the lien. Any possible right of the receiver to redeem would be embarrassed by additional costs and ultimate losses to the general creditors and a redemption by any creditor would not only meet the same embarrassment, but it would result either in giving such redeeming creditor an advantage over other creditors or of redeeming to his own inconvenience that all creditors might be protected. If the whole subject were within the control of the court appointing the receiver, the lien-holder's interest could be protected by his right of priority to the proceeds of any sale; the opportunity for competition in selling at private sale would be afforded; the wisdom of the chancellor could be taken upon the prudence and fairness of the sale and the adequacy of the consideration; costs would be spared and redemption complica-

tions avoided. There are probably other illustrations of the value and necessity of the rule which would enable the court in custody of the property to control its sale and the distribution of the proceeds, but these will suffice to make clear the impropriety of permitting another court to absorb the functions of the court in possession and possibly strip it of all property and all opportunity to serve the beneficial ends for which it was given jurisdiction.

In High on Receivers, 3d ed., section 141, it is said: "So extremely jealous are courts of equity of an interference, *pendente lite,* with the possession of their receivers, that they will not ordinarily permit property which is the subject of the receivership to be sold on excution." *Robinson* v. *Atlantic, etc., R. W. Co.,* 66 Pa. St. 160; *Skinner* v. *Maxwell,* 68 N. C. 400; *Wiswall* v. *Sampson,* 14 How. 52; *Edwards* v. *Norton,* 55 Tex. 405; *Ellis* v. *Vernon Ice, etc., Co.,* 86 Tex. 109; *Walling* v. *Miller,* 108 N. Y. 173; *Thompson* v. *McCleary,* 159 Pa. St. 189. "And while the appointment of a receiver does not destroy existing liens upon the property, it prevents their enforcement by the ordinary legal process, and compels the persons asserting such liens to seek their remedy in the cause in which the receiver is appointed." *Walling* v. *Miller, supra; Ellis* v. *Vernon Ice, etc., Co., supra.* "Even though an execution has been levied upon the property before the appointment of the receiver, it is held that there cannot be a lawful sale under such execution without leave of the court appointing the receiver." *Walling* v. *Miller, supra.* "The proper remedy for a judgment creditor who desires to question the receiver's right to the property, is to apply to the court appointing him, to have the property released from the receiver's custody, in order that he may proceed against it under his judgment." *Robinson* v. *At-*

*lantic, etc., R. W. Co., supra; Thompson* v. *McCleary, supra; Dugger* v. *Collins,* 69 Ala. 324. "To permit the property, while in custody of the receiver, to be levied upon and sold under the process of another court, would at once give rise to a conflict of jurisdiction and would seriously interfere with and impair the receiver's right to the management of the property. So when real estate is in the actual possession of a receiver, pending litigation as to the title, it is not subject to levy and sale under execution to satisfy a judgment rendered subsequent to the receiver's appointment." *Edwards* v. *Norton, supra.* Again it is said, section 142, "As still further illustrating the aversion entertained by the courts of equity toward any interference with the possession of their receivers, it is held that a receiver is not justified in paying out money in any other manner than upon the order of the court appointing him, and that this court will not sanction a payment made by him, even upon the compulsory process of another court. And when a judgment creditor has attached money in the hands of a receiver, under proceedings instituted in a court of law, and has obtained an order therein for the payment of the money attached, which order is obeyed by the receiver, such payment will not be allowed by the court in passing his accounts." *De Winton* v. *Mayor, etc.,* 28 Beav. 200.

Under the rules here declared, the doubtful propriety of ever permitting actions against receivers in courts other than that making the appointment is made manifest, and that the consent of the appointing court to make the receiver a party defendant was not a consent to relinquish the possession and control of the property seems to follow.

In our judgment the consistency of these rules with the objects for which they were designed renders the conclusion necessary that the consent to sue is but for

the purpose of submitting to another court the inquiry as to the extent of the credit, the validity and priority, as between the parties, of the lien claimed, and that the application of the property to the debt and preservation of the rights of the creditor so ascertained must rest with the appointing court, unless it has clearly parted with that right. We conclude, therefore, that the trial court erred in overruling said motions to modify the judgment.

It is urged by the appellee, upon assignment of cross-error, that its judgment should have been increased by an interest charge from the time the account was found to be due to the date of the judgment. No authority for this contention is cited, and we know of none. The statute, R. S. 1894, section 7045, provides for the allowance of interest "on an account stated from the date of settlement, or on an account closed upon the day an itemized bill shall have been rendered and payment demanded," but the findings do not bring the claim within these provisions.

The judgment is reversed, with instructions to sustain the appellants' several motions to modify the judgment.

Filed April 23, 1896.

NOTE.—A review of the authorities on the right to file a single mechanic's lien against several buildings is found in a note to *Wilcox* v. *Woodruff* (Conn.), 17 L. R. A. 314.