STATE EX REL. ELDER, RECEIVER *v.* CIRCUIT COURT OF
MADISON COUNTY ET AL.

[No. 26,633. Filed January 16, 1937. Rehearing denied
April 30, 1937.]

*McHale, Arthur & Myers, Herbert J. Patrick* and *Evans & Hebbel,* for appellants.

*Cloe, Campbell & Cloe, Gavin & Gavin, Wymond J. Beckett, Milton B. Hottel,* and *N. E. Elliott,* for appellees.

TREANOR, J.—This is an original action filed in this court by the relators, Bowman Elder, as receiver of Indiana Railroad, and Indiana Railroad, to obtain a writ of prohibition against the Madison Circuit Court of Madison County, Indiana, and Charles E. Smith, Judge of the Madison Circuit Court, to restrain and prohibit respondents from exercising any further jurisdiction over relators or over the property held by Elder as receiver and from requiring relators to appear in the Madison Circuit Court and answer to a supplemental petition filed therein to enforce a decree of the Madison Circuit Court. A temporary writ of prohibition was issued by this

Court and respondents filed an answer setting forth their reasons why such temporary writ should not be made permanent.

From relators' petition and the response filed by respondents, the following facts appear:

On December 31, 1924, Arthur W. Brady was appointed receiver of the property and assets of Union Traction Company of Indiana by the Madison Circuit Court. At the time of such appointment various persons, hereinafter referred to as "tort claimants" held claims against the Union Traction Company and its associated companies on account of injuries to persons and damages to property occurring prior to the appointment of such receiver, which claims aggregated the sum of $142,617.24. After the appointment of the receiver the tort claimants filed their claims with Brady as such receiver and asserted a right to preferential payment from the funds in the hands of such receiver. On June 25, 1929, the Madison Circuit Court allowed the claims as general claims against the assets of Union Traction Company but denied to such tort claimants the right of preferential payment and priority over the claims of various mortgage creditors. From the decree of the court denying such prayer, the tort claimants appealed to this court, presenting upon such appeal the question whether or not these tort claimants had a preference and priority over the mortgage creditors.

While such appeal was pending in this court the receiver filed his petition in 'the Madison Circuit Court asking the authority and order of that court to sell at public sale the various assets and properties of the Union Traction Company and its associated companies, and pursuant to such petition, the Madison Circuit Court on June 6, 1930, made and entered its decree of sale authorizing, ordering and directing the receiver to sell the said assets and properties at public sale. The Madi-

son Circuit Court's decree contained the following provisions with respect to the tort claims:

"The property described in Groups 'A,' 'B,' 'C,' 'D,' 'E,' 'F,' and 'G,' shall be sold subject to the following express conditions which shall be binding upon the purchaser or purchasers of said respective groups:

"In the event the judgment of the Madison Circuit Court . . . shall be reversed and thereafter the rights of said tort claimants to a preference over the mortgages . . . shall be finally established and to the extent that such preference shall be so established, the holders of said tort claims shall have a first lien . . . upon the property constituting said respective Groups upon or in connection with which said tort claims originated, which lien shall, under such conditions, attach as of the date of the confirmation of the sale hereinafter ordered; . . .

"In the event that said property shall be sold to one purchaser as Group 'J,' said property shall be sold subject to the same conditions expressed in the preceding paragraph and said tort claims, if determined to be entitled to preference, and to the extent so determined, shall thereupon constitute a lien upon the entire property so sold as of the date of the confirmation of said sale.

"The purchaser or purchasers of such mortgaged property, or any part thereof, his, its or their nominees or assigns, are hereby given and granted the right, at his or their own expense, to defend in the name of Union Traction Company No. 3 or Arthur W. Brady, Receiver, any suits against said Union Traction Company No. 3 or Arthur W. Brady, Receiver, to file, maintain, and prosecute any and all appeals, petitions for rehearing or petitions to transfer in any of said causes, to file briefs and appear by counsel and are likewise granted and given the right to take and conduct all further proceedings which may be necessary in connection with the appeals now pending in the Appellate Court of Indiana with respect to said tort claims heretofore adjudicated by this court; all such proceedings with respect to said last mentioned tort claims may be taken by such purchaser or purchasers, his, its or their nominees or assigns in the name of said Union Traction Company No. 2 and/or in the name of

the mortgage trustees of said respective divisions and shall include the right to appear by counsel, file briefs, petitions for rehearing and petitions to transfer and likewise to conduct in the name of said Union Traction Company No. 3 or said mortgage trustee any further proceedings in the court below or in any subsequent appeal in the event said judgment should be reversed."

By express provisions in the decree credit upon the purchase price was authorized to be given the successful bidder for mortgage bonds of the Union Traction Company and associate companies and it was also decreed that upon confirmation of sale by the court the deeds executed to the purchaser should operate to release the property from "all right, title, interest, estate. and claim whatsoever, either at law or in equity, of any and all parties to each and every of the above entitled and consolidated causes, . . . except as in this decree otherwise provided."

Pursuant to the decree of the Madison Circuit Court the receiver on July 2, 1930, sold the assets involved in this action to Barnard P. Shearon who nominated Indiana Railroad to receive the deed of conveyance. The Madison Circuit Court approved the receiver's report of sale and ordered and approved the execution and delivery of a deed of conveyance to Indiana Railroad, which deed contained a provision that the property was sold and conveyed "in the manner specified and directed in said decree and upon the terms and conditions therein set forth." In making payment for the assets so sold upon the receiver's sale the purchaser surrendered and received credit therefor upon the purchase price mortgage bonds of the Union Traction Company, which mortgage bonds, in the case of *McCullough et al.* v. *Union Traction Company of Indiana et al* (1934), 206 Ind. 585, 186 N. E. 300, were held to be inferior and junior in order of payment to the claims of the tort claimants hereinabove referred to.

The Madison Circuit Court confirmed the sale, its order of confirmation containing the following:

"It is further ordered, adjudged and decreed that the respective purchaser of said several parcels of property herein above referred to shall complete the payment thereof either in cash or otherwise as herein above and as in said decree provided. . . and upon such payment being made, the receiver shall execute his receiver's deeds, and proper instruments of assignment . . . and in all cases *such properties shall be conveyed subject to the several liens, incumbrances and conditions as set forth in the decree of sale entered by this court June 6, 1930."* (Our italics.)

In his final report showing the disposition of the funds received upon sale of the property the receiver alleged that he had received no funds which were not subject to preferential claims of mortgagees, pledgees and certain creditors who by decree of June 6, 1930, were adjudged to be preferred and that "no payments have been made on account of any general or tort claims arising prior to the original appointment" of the receiver, but that said claims, which included the claims of the tort claimants involved in this proceeding, "are wholly unsatisfied." The report also contained the following:

"The receivership matters undisposed of at this time, as hereinbefore shown, are, in addition to further disbursement and disposition of the said cash on hand, the following:
"(a) The steps to be taken in the event that the tort claims arising before the receivership, being those scheduled in Exhibit C be finally adjudged to be entitled to preference."

In his final report the receiver asked the court to "finally order and decree the approval of this report and the settlement and termination of said receivership as to all matters and things, except those relating to the disposition of said undisbursed funds and the steps to be

taken with respect to the claims above referred to, as to which such order be made as the Court may find expedient and equitable."

On January 12, 1931, the Madison Circuit Court approved the report from which the above portions are quoted, and in its order and decree made the following finding:

"The court also finds that no final decision has been made as to the right to preference on the part of the holders of certain unsatisfied tort claims which arose prior to the appointment of said Receiver on December 31, 1924, which tort claimants are those referred to in paragraph A-11 of Article 1 of said decree entered June 6, 1930, and listed in Exhibit C of said report, but that the appeal of such tort claimants for the establishment of such rights of preference is still pending undetermined in the Appellate or Supreme Court of Indiana.

"The court also finds that there are certain tort claims arising during the receivership . . . and that there may be other claims against said Receiver not shown by said Exhibit D, and that all such claims are still pending undisposed of, and, if valid, are a charge against said Receiver and enforceable against the property sold at said sale by said Receiver July 2, 1930.

"And the court further finds . . . that all matters and things arising out of or connected with said receiverships have been completely and finally settled and disposed of, except those relating to undisbursed funds and to said claims as stated in said report, and that said report should be approved and confirmed, and that all matters and things arising out of or connected with the said receiverships, or any of them, should be found and adjudged to be finally and completely settled and terminated, and said *Receiver finally and absolutely discharged from liability* in connection therewith, *except* as to the disposition to be made of said undisbursed funds in the hands of said Receiver and *except as to the steps, if any to be taken should preference be finally adjudged in the case of tort claims arising prior to December 31, 1924, and should liability be finally established, in the case of unsettled claims arising during the receivership* as specified

in said report, with respect to which and to no other matter whatsoever said receivership should be continued." (Our italics.)

Upon the foregoing finding the Madison Circuit Court rendered the following judgment:

"It is therefore considered, ordered, decreed and adjudged by the court that the said final report of said Receiver, which is as follows (here copy) be and the same is in all things approved and confirmed.

"It is further considered, ordered, decreed and adjudged by the court that all matters and things arising out of or connected with the said receivership . . . be and hereby are finally and completely settled and terminated, and the said Receiver is finally and absolutely discharged from liability in connection therewith, except as to the disposition to be made of the said undisbursed funds in the hands of said Receiver and except as to the steps to be taken in the event that the tort claims arising before the receivership, being those set forth in Exhibit C of said report, be finally adjudged to be entitled to preference and the steps to be taken in the event that liability should be finally adjudicated or determined to exist on account of claims arising during the receivership, being those listed in Exhibit D of said report, and any other such claims as may hereafter be found to exist; and the said receiverships are now continued, subject to further order of the court, only for the purpose of taking such steps as may be necessary or proper to be taken by the Receiver in the event that the tort claims arising prior to December 31, 1924, be finally adjudged to be entitled to preference, and for the further purpose of taking such steps as may be necessary or proper to be taken by the Receiver in the event that liability should be finally adjudged or determined to exist against said Receiver on account of claims arising during the receivership, and for no other purpose whatsoever.

"It is further considered and ordered that said Receiver make such further reports from time to time as he may deem advisable or as the Court may direct with reference to the above reserved matters."

On June 27, 1933, this court reversed the judgment of the Madison Circuit Court denying the tort claimants preference and priority of payment to payment of the mortgages, and held that the claimants were entitled to payment before payment of the mortgage debts out of "Reserve for Injuries and Damages" and "Surplus Earnings" from which accounts money rightfully belonging to the tort claimants had been wrongfully used to pay interest on mortgage debts and for the purchase of equipment. (*McCullough et al.* v. *Union Traction Co. of Indiana, et al., supra.*) The cause was remanded to the Madison Circuit Court with instructions to the trial court to re-state its conclusions of law in favor of the tort-claimants.

In accordance with the opinion of this court the Madison Circuit Court, on December 24, 1934, re-stated its conclusions of law and on January 8, 1935, entered its decree thereon, allowing the claims of the tort-claimants as preferred claims superior and paramount to the mortgage claims, giving judgment therefor, ordering their payment as such by the receiver, and providing that to the extent surplus earnings and reserve for injuries and damages had passed into the general assets of the Union Traction Company the tort-claimants "have an equitable lien upon such assets to secure payment of their claims not exceeding, however, the total amount of said diversions."

On February 11, 1935, the tort-claimants filed their Supplemental Petition to Enforce Decree in the receivership proceeding which had been commenced in the Madison Circuit Court on Dec. 31, 1924. In this supplemental petition were contained allegations concerning the decree of sale, receiver's report of sale, confirmation thereof, receiver's final report and approval thereof, the gist of which is above set out. Further allegations were to the following effect: On June 27,

1933, Bowman Elder was appointed receiver of Indiana Railroad by the Superior Court of Marion County, Room 5, and he, as such receiver, and his grantees and grantees of Indiana Railroad, are in possession of the property sold upon order of the Madison Circuit Court on July 2, 1930, which property is subject to the jurisdiction of the Madison Circuit Court. At the time of the appointment of a receiver for the Union Traction Company, on December 31, 1924, that Company's Reserve for Injuries and Damages showed a balance of $185,100.08, and at the time the receiver ceased to operate the business of the company in July, 1930, the balance of such Reserve account was $298,885.88. The sum of $190,732.46, constituting income from operations under the receivership, being a part of a fund known as "surplus earnings" and applicable for payment to the tort-claimants, was expended for the purchase of equipment and betterments, which equipment was sold by the receiver as part of the assets of the Union Traction Company to Indiana Railroad, and was paid for by surrendering and receiving credit for mortgage bonds of the Union Traction Company. Such bonds were subordinate to the claims of the tort-claimants. Interest due upon bonds of the Union Traction Company had been paid by that company, leaving an insufficient amount of money in its treasury to equal the balance shown in the Reserve for Injuries and Damages. Upon the Receiver's sale of the receivership assets he paid over to Indiana Railroad, as purchaser, large sums of money received from operation of the business, leaving insufficient funds in his hands to pay the claims of the tort-claimants. The petitioners asked that the court "enforce their lien upon the property, . . . fix a time within which the claims shall be paid by the defendants and on failure to pay the same within the time limited, . . . by its order and decree re-sell said property at the risk and cost of

the purchaser in case he or it shall fail for a period of ten days to make any payment on account of the purchase price pursuant to an order of this court requiring such payment." Petitioners also asked that the Madison Circuit Court enjoin and restrain defendants "from selling or otherwise disposing of the property now in their hands, received from the receiver" appointed by that court, until further order of court. James A. Van Osdol, Receiver of the Union Traction Company of Indiana, Bowman Elder, Receiver of Indiana Railroad, Marion Railways, Incorporated, and Indiana Railroad were named as defendants and summons was issued and served upon relators. Relators entered their special appearance to the petition and filed pleas in abatement. The tort claimants, petitioners, filed demurrers to the pleas in abatement and the respondent Madison Circuit Court, by the Judge of the Madison Circuit Court sustained the demurrers. Relators thereupon filed demurrers to the petition, which demurrers were overruled by respondent court and relators were ruled to answer.

In their petition for writ of prohibition relators allege that the respondent Judge of the Madison Circuit Court announced that it proposed and intended to exercise and assert jurisdiction over the persons of Bowman Elder, Receiver of Indiana Railroad, and Indiana Railroad, and over the property purchased by the Indiana Railroad as above set out.

Upon their petition to this court relators obtained a temporary writ prohibiting the Madison Circuit Court and the Judge thereof from exercising any further jurisdiction over the persons of Bowman Elder as Receiver of Indiana Railroad and Indiana Railroad, or over the property purchased by Indiana Railroad and now held in the custody and possession of Elder as receiver under the jurisdiction of the Marion Superior Court Room 5

of Marion County, Indiana, and from requiring relators to appear in the Madison Circuit Court and answer the supplemental petition to enforce decree or from making any further orders, judgments or decrees upon or against relators or upon or against the property.

The relators' case for a writ of prohibition rests entirely upon the assumption that the assets of Indiana Railroad are now exclusively in the control of the Marion Superior Court, by virtue of the Indiana Railroad receivership, and that any action by the Madison Circuit Court to enforce the lien of the tort claimants against the assets of Indiana Railroad constitutes an unlawful invasion of the jurisdiction of the Marion Superior Court. The validity of the foregoing assumption depends upon the legal effect of the orders of the Madison Circuit Court made in connection with the transfer of the assets of the Union Traction Company to Indiana Railroad and the decrees made to safeguard the interests of tort-claimants and to enforce same against properties which were transferred to Indiana Railroad. Consequently the primary inquiry in this original action is not whether the Madison Circuit Court can interfere with the Marion Superior Court in its administration of the Indiana Railroad receivership, but whether the Madison Circuit Court ever lost jurisdiction to give the relief which is sought in the proceedings now pending before it.

The Madison Circuit Court did not intend to discharge the receiver of the Union Traction Company; but, on the contrary, expressly decreed the continuance of the receivership for the purpose, among others, of disposing of the tort claims in accordance with the decision of this Court in the then pending appeal in the case of *McCullough* v. *Union Traction Company of Indiana, supra.* In its decree of sale the Madison Circuit Court had provided for the contingency of this court's

holding that the tort claims should be perferred to the mortgage claims and had decreed that in such event "the holders of said tort claims shall have a first lien . . . upon the property consistuting said respective groups upon, or in connection with which, said tort claims originated, which lien shall under such conditions attach as of the date of the confirmation of the sale hereinafter ordered." And when this court on June 27, 1933, decided that the tort claimants were entitled to payment of their claims out of "surplus earnings" and out of any sum represented by the item "Reserved for Injuries and Damages" and that such claims, as respects the foregoing funds, were superior to claims of mortgage bondholders the Madison Circuit Court properly took judicial action to give effect to this court's judgment. By decree and judgment these claims were given their lawful priority and the receiver was ordered to pay same. The Madison Circuit Court expressly adjudged that to the extent surplus earnings and reserve for injuries and damages had passed into the general assets of the Union Traction Company the tort claimants had "an equitable lien upon such assets to secure payment of their claims, not exceeding however, the total amount of said diversion."

The legal effect of the judgment of this court in *McCullough* v. *Union Traction Company, supra,* and the foregoing action of the Madison Circuit Court was to establish a lien on the assets of the Union Traction Company in favor of the tort claimants as of the date of the confirmation of the sale, and the assets passed to the Indiana Railroad subject to such lien. Furthermore, in passing upon the "final" report of the receiver of the Union Traction Company the Madison Circuit Court found "that all such claims (including claims in question) are still pending and undisposed of, and, if valid, are a charge against said receiver and enforceable

against the property sold at said sale by said receiver
. . ." and the court expressly decreed that the receiver-
ship be continued for the purpose of disposing of the
tort claims, which necessarily included the reservation
of jurisdiction to enforce the priority of the tort claims
and the lien based thereon by a re-sale of the properties
if necessary.

In view of the foregoing there can be no doubt that
the Madison Circuit Court would still have jurisdiction
to enforce the claims of the tort claimants by sale of the
Property of the Indiana Railroad if a receiver had not
been appointed for Indiana Railroad. See *Henry, Re-
ceiver* v. *Claffey* (1920), 189 Ind. 609, 621, 127 N. E.
193, 128 N. E. 694.[1]

---

(1) In this case appellee began a suit against a receiver of a
railroad company to recover for injuries occurring during oper-
ation of the road by the receiver. The suit was not begun until
after transfer of the property by the receiver to a purchaser at
a receiver's sale ordered by the court. Judgment was recovered
against the receiver who appealed. In reversing the judgment,
this Court, by Lairy, J., said:
"The court in this case, by its order of sale, retained jurisdic-
tion to enforce against the property sold certain claims arising
out of the receivership. Where this is done, the court does not
lose jurisdiction by the discharge of the receiver, but it may re-
tain or reassume jurisdiction thereafter for the purpose of en-
forcing such a claim. *Jesup* v. *Wabash R. Co.* (1890) 44 Fed.
663. In discussing the procedure to be adopted in the enforce-
ment of such a claim after the discharge of a receiver, a well-
known text-writer on the subject of receivers says: 'If the court
retains jurisdiction of the original cause after the sale of a
railroad and the discharge of its receiver, for the purpose of en-
forcing payment of claims remaining unpaid against the receiver,
a claimant's proceedings thereunder are analogous to an action
in rem. And it is well settled, that, in order to give a court full
and complete jurisdiction in rem, some form of notice must be
given to parties whose rights and interests may be affected by
the decree; and, where no form of notice is prescribed by law,
the court is empowered to direct the notice to be given. Therefore,
the purchaser and those in possession of the railroad after the
sale—whose interests would be affected by a decree establishing
a claim against the property—must have notice of such a claim
and the presentation of it to the court; and thereafter it is com-
petent for the court, if the claimant is by law entitled to a lien,
to establish the same against the property, and to fix a time
for the payment of the sum found to be due; and in default of
payment at the specified time to prescribe a proper order of sale.'
Gluck and Becker, Receivers (2d ed.) §93." *Henry, Receiver*, v.
*Claffey* (1920), 189 Ind. 609, 621, 127 N. E. 193, 128 N. E. 694.

We are of the opinion that the power of the Madison Circuit Court to enforce the claims by sale of the property has not been limited by the fact that such property is now in the control of a receiver who is operating Indiana Railroad. The retroactive effect of this court's decision in *McCullough et al.* v. *Union Traction Company of Indiana et al., supra,* and of the action of the Madison Circuit Court based thereon, was to impress upon the property of Indiana Railroad a lien to secure payment of the debts due the tort-claimants, as of the date of the confirmation of the sale of the railway properties to Indiana Railroad. In other words the legal situation became the same as if the Madison Circuit Court had expressly provided in its order of sale that the property was being conveyed subject to a lien to secure payment of the obligations owing to the tort-claimants and upon the express condition that the Madison Circuit Court was reserving jurisdiction over the property thus conveyed to compel payment of such obligations by enforcing the liens, if necessary. Since "the usual mode of enforcing an equitable lien is by a decree for the sale of the property to which it is attached and for the application of the proceeds to the payment of the debt secured by it" the jurisdiction reserved by the Madison Circuit Court must have been broad enough to include the power to decree a sale of any property which was conveyed to Indiana Railroad subject to a lien for the payment of the tort claims which this court held to be entitled to priority over the mortgage bond claims.

It should be noted that the Madison Circuit Court is not seeking to control the discretion or activities of Bowman Elder as the operating receiver of Indiana Railroad; nor to interfere with the jurisdiction of the Marion Superior Court in its control of the operating receivership. No judgment of the Mad-

ison Circuit Court can bind the receiver personally or limit the judicial power of the Marion Superior Court. The proceeding which relator seeks to prohibit is not an independent suit against Bowman Elder, Receiver; but is, as disclosed by the "Supplemental Petition" a defendant proceeding for the purpose of making effective the Madison Circuit Court's own judgment and decrees through the exercise of a properly reserved jurisdiction over a cause pending in the Union Traction Company receivership. The proceeding is analogous to an action in rem, insofar as it affects the property of Indiana Railroad, and it was neither necessary nor proper to make Bowman Elder, the Receiver of Indiana Railroad, a party defendant, since he could not be bound personally by any decree or judgment rendered therein. But his interest is such that he was entitled to notice and an opportunity to be heard. He cannot be compelled to appear, but his non-appearance cannot prevent the Madison Circuit Court's taking proper action to enforce the liens.

We see no grounds for relator's fear of an "unseemly conflict" between the Madison Circuit Court and the Marion Superior Court. When the Madison Circuit Court has determined the balance due on the tort claims and the particular properties subject to the liens it may proceed to fix a time for the payment of the sums due; and, in default of payment at the specified time, prescribe a proper order of sale. Comity would require that the receiver of Indiana Railroad be notified of such action in order to enable the Marion Superior Court to decide whether it would be feasible to authorize its receiver to make the payment and to continue the operation of Indiana Railroad. In case of failure of the receiver of Indiana Railroad to make payment at the specified time, or to make arrangements with the receiver of Union Traction Company, which would be satisfactory

to the Madison Circuit Court and the Marion Superior Court, the Madison Circuit Court has the power to sell the property which is subject to the lien; and to transfer to the purchaser such right, title and interest therein as to entitle him to possession of the property as against the receiver of Indiana Railroad. In case of any further uncertainty as to the limits of the respective jurisdictions of the Madison Circuit Court and the Marion Superior Court we assume that recourse will be had to this court rather than to "unseemly conflict" between the two courts.

Nothing in this opinion is intended to intimate that the Madison Circuit Court cannot, in its discretion, order its receiver to petition the Marion Superior Court to direct its receiver to pay the amount due or at the receiver's option to deliver possession of the properties subject to the liens to the receiver of the Madison Circuit Court; and thus enable the Madison Circuit Court to obtain possession of the properties before the sale to satisfy the liens is consummated.

We conclude that the effect of the action of the Madison Circuit Court was to continue its jurisdiction, through the Union Traction Company receivership, over the assets transferred to Indiana Railroad to whatever extent was necessary to enforce the tort claims in question and that the action of the Marion Superior Court in appointing a receiver for Indiana Railroad could not terminate the reserved jurisdiction of the Madison Circuit Court, the Madison Circuit Court being a court of general jurisdiction and of coordinate jurisdiction with the Marion Superior Court.

Since the Union Traction Company receivership is still pending in the Madison Circuit Court, with jurisdiction in that court to entertain the proceeding instituted by tort-claimants to enforce their claims by appropriate action of that court in such receivership, the

temporary writ of prohibition heretofore ordered is dissolved and relators' petition is denied.

## DISSENTING OPINION

FANSLER, J.—I dissent for the reason that, as I see it, the principal opinion is inconsistent with important and well established principles affecting the jurisdiction of courts in receivership proceedings.

There is no contention concerning the facts. The judgments in question are a lien upon the property purchased by the Indiana Railroad from the receiver of the Madison Circuit Court and now in the hands of and under the control of the Marion Superior Court. The principal opinion concedes that the Madison Circuit Court has no power to wrest the property from the possession of the Marion Superior Court, and that it cannot get jurisdiction of the latter court's receiver so as to bind the receivership by any judgment entered in the Madison Circuit Court. When the property was sold by the receiver of the Madison Circuit Court to the Indiana Railroad, and delivered to the purchaser, there could be no power reserved in the Madison Circuit Court to lay hands again upon the property and sell it, without notice to the Indiana Railroad, by which it would get jurisdiction of the railroad. If the property was now in the hands of the Indiana Railroad, and not in the hands of the Marion Superior Court, upon notice to the Indiana Railroad, it might come into the Madison Circuit Court and answer the petition to have the property sold in satisfaction of the liens. It might set up payment of the liens as a defense, or the statute of limitations, or perhaps other defense. If, upon the facts involved in these defenses, there was judgment against the Indiana Railroad, it might then elect to pay the liens rather than suffer the property to be sold. When a receiver was appointed for the Indiana Railroad, the Superior Court of

Marion County, through its receiver, became vested with all of the rights of the Indiana Railroad in the property in question. Among those rights was the right to make defenses and the right to pay the judgments, if its defenses were not sustained, rather than have the property sold. These rights cannot be adjudicated and stricken down by a court that has no jurisdiction to enter a judgment binding the receiver and that does not have possession of, and that cannot get possession of, the property in order to sell it. The principal opinion recognizes that, if the Madison Circuit Court undertakes to sell the property in question, it cannot require the receiver to deliver the property, and that the purchaser must go to the Marion Superior Court and file its petition asking that the Marion Superior Court deliver the property. It is said in the principal opinion that, while the Madison Circuit Court cannot command the receiver of the Marion Superior Court, some informal notice should be given the receiver "to enable the Marion Superior Court to decide whether it would be feasible to authorize its receiver to make the payment and to continue the operation of Indiana Railroad. In case of failure of the receiver of Indiana Railroad to make payment at the specified time (I assume a time fixed by the Madison Circuit Court), or to make arrangements with the receiver of Union Traction Company, which would be satisfactory to the Madison Circuit Court and the Marion Superior Court, the Madison Circuit Court has the power to sell the property which is subject to the lien; and to transfer to the purchaser such right, title and interest therein as to entitle him to possession of the property as against the receiver of Indiana Railroad. In case of any further uncertainty as to the limits of the respective jurisdictions of the Madison Circuit Court and the Marion Superior Court we assume that recourse will be had to this court rather than to

'unseemly conflict' between the two courts." That there well may be uncertainty is thus recognized in the principal opinion. If the purchaser at the sale of the property by the Madison Circuit Court is entitled to possession as against the receiver of the Indiana Railroad, where will the right to possession be asserted, and what court will command the delivery of the property? Clearly not the Madison Circuit Court, since it has no jurisdiction to command the Superior Court of Marion county, and if, upon petition, the Superior Court of Marion County, having jurisdiction to decide the question, finds that the liens were paid, what is the result? Or if the purchaser at the sale by the Madison Circuit Court files his petition for possession of the property in the Marion Superior Court, and the Marion Superior Court orders its receiver to pay the amount of the liens, can the purchaser still insist upon the property rather than the money? If not, the Madison Circuit Court did not sell the property, but only the rights of the judgment lien holders, which it has no jurisdiction to do. It cannot act as agent of the judgment lien holders in selling their property, and if the Marion Superior Court may not order the money paid, rather than submit to a sale of the property, then the right which the Indiana Railroad had, and which the Superior Court of Marion County, through its receiver, had, to pay when called to account, rather than have the property sold, has been stricken down, presumably by the judgment of the Madison Circuit Court. This is a valuable right, which vested in the Indiana Railroad through the conveyance of the property to it, which could not be stricken down by any court without jurisdiction of the person of the owner of the property. That vested right is in the Superior Court of Marion County, through its receiver, and it cannot be divested by the judgment of any court that has not jurisdiction to enter judgment against the re-

ceiver, unless that court has possession of the property. If the property had consisted entirely of chattels, and it had been sold to a resident of another state, and taken out of the state, it would hardly be contended that in an *ex parte* proceeding without jurisdiction of the person of the owner, and without possession of the property, the Madison Circuit Court could sell the property and vest title in the purchaser so that he might go to the foreign jurisdiction and claim the property and deny the owner the privilege of paying the judgments rather than give up the property. The Marion Superior Court, and its receiver, and the property in their possession are as far from the jurisdiction of the Madison Circuit Court as though they were in another state.

It is universally recognized that a court cannot affect the title to property without having acquired jurisdiction of the person of the owner, or one having title to the property, or jurisdiction of the property itself by having it in possession. There is another universally-established rule concerning receiverships. In *Buck* v. *Colbath* (1865), 70 U. S. (3 Wall.) 334, 341, it is stated thus : "That principle is, that whenever property has been seized by an officer of the court, by virtue of its process, the property is to be considered as in the custody of the court, and under its control for the time being; and that no other court has a right to interfere with that possession."

The same principles here involved were considered by the court in *Premier Steel Co. et al.* v. *McElwaine-Richards Co.* (1896), 144 Ind. 614, 621, 622, 623, 43 N. E. 876, 878, 879. In that case, permission of the court, which had appointed a receiver over property, to make him a party defendant in another court, in an action to foreclose a mechanic's lien upon the property which existed at the time of his appointment, was obtained, and a judgment was had foreclosing the lien. The grant-

ing of permission to sue the receiver was held not to be a relinquishment of control of the property which authorized the other court to order its sale. The court said: "This question rests upon the proposition that by the receivership the property was in *custodia legis,* and that a court, other than that in which the receivership is pending, has no authority to deprive the court having custody of its possession. That this proposition is correct there can be no doubt whatever, but counsel have been unable to find authority on either side of the question as to whether the court in custody surrenders its possession and submits to a decree and sale by granting the lienor permission to sue the receiver. The reason that permission is required doubtless is that the court's officer may not be involved in constant and expensive litigation, and that the court's possession may not be placed in peril by the exercise of conflicting jurisdictions. The end sought by the rule is not only the avoidance of conflict in the jurisdiction of the courts, but the preservation of the interests of creditors and debtors. These interests have been entrusted to the court of equity, which affords a more comprehensive and perfect system of justice than the court of law, in order that all may be guarded and protected, each with reference to every other. If the property in question should be sold upon the judgment in this case, the sale would be by public outcry, a method often not attended by results so satisfactory, and upon the wisdom and discretion of the sheriff rather than of the chancellor, who may approve or disapprove the receiver's sale. If the right of the lower court was to direct the sale, by its own officer and upon execution as in other instances, that right would be in utter disregard of the condition of the estate as to the ability of the receiver to realize by certificates, rentals or other means, permitted by the court in possession, sums sufficient to pay the appellee's claim

and extinguish the lien. Any possible right of the receiver to redeem would be embarrassed by additional costs and ultimate losses to the general creditors and a redemption by any creditor would not only meet the same embarrassment, but it would result either in giving such redeeming creditor an advantage over other creditors or of redeeming to his own inconvenience that all creditors might be protected. If the whole subject were within the control of the court appointing the receiver, the lien-holder's interest could be protected by his right of priority to the proceeds of any sale; the opportunity for competition in selling at private sale would be afforded; the wisdom of the chancellor could be taken upon the prudence and fairness of the sale and the adequacy of the consideration; costs would be spared and redemption complications avoided. There are probably other illustrations of the value and necessity of the rule which would enable the court in custody of the property to control its sale and the distribution of the proceeds, but these will suffice to make clear the impropriety of permitting another court to absorb the functions of the court in possession and possibly strip it of all property and all opportunity to serve the beneficial ends for which it was given jurisdiction. . . . 'And while the appointment of a receiver does not destroy existing liens upon the property, it prevents their enforcement by the ordinary legal process, and compels the persons asserting such liens to seek their remedy in the cause in which the receiver is appointed.' . . . 'The proper remedy for a judgment creditor who desires to question the receiver's right to the property, is to apply to the court appointing him, to have the property released from the receiver's custody, in order that he may proceed against it under his judgment'."

It will be seen that, in this case, the only interest of the Madison Circuit Court would be to serve the interest

of the lien holders, while the Marion Superior Court is charged with the duty of protecting the interest of the lien holders, and also preserving the interests of general creditors.

The quotation from *Henry, Rec.* v. *Claffey* (1920), 189 Ind. 609, 127 N. E. 193, 128 N. E. 694, printed as a footnote to the principal opinion, is pure *obiter dictum.* The purchaser of the railroad property was not a party to the action. But the facts in the case were quite different. There the contract of sale provided that the purchaser would submit to the jurisdiction of the court, and in this case, if the property was still held by the Indiana Railroad, the property being located in Madison County, the Madison Circuit Court could have obtained jurisdiction over the Indiana Railroad by notice, and could have bound it by its judgment. Under such circumstances the dictum in the case referred to may have been in point, but here a receiver has been appointed for the property; and, notwithstanding the property may be located in Madison County, the Madison Circuit Court has no jurisdiction to lay hands upon the property, and it cannot, by notice, get jurisdiction of the receiver, in whom the title is vested.

It must be presumed that all courts of equal jurisdiction will do equal and like justice to all parties, and that any court to which rights are submitted will decide the questions presented correctly. If this is not done, the remedy is by appeal.

Any rule of procedure that departs from the basic principles above referred to will necessarily give rise to doubts and conflicts concerning title and jurisdiction.

In the present case it may fairly be assumed from the facts disclosed in the record that the judgment liens have not been paid; that the statute of limitations has not run against them; and that there are no defenses. It would seem that the property is probably worth more

than the liens, and that probably the best interests of the receivership would be served by paying the liens if funds are available. But it may be that some of the property is more useful to the receivership in the operation of the railroad than other parts, and that it might be advantageous to sell part of the property and pay part of the liens in cash. These are matters which can only be determined by the Marion Superior Court; perhaps after bids are received upon separate and different parcels of property. No reason is suggested why the Marion Superior Court should be deprived of the opportunity to exercise a sound discretion in respect to these matters in the interest of general creditors, who are not protected by a lien, and who are in a court of equity as much entitled to protection as the lienholders. The well-settled principles, which are based upon the universal rule that the protection of lien holders is left to the court having the administration of the receivership which has possession of the property, are based in sound reason. The lien holders will be fully protected. They are entitled to no more. Those who must take what is left after the liens are satisfied are entitled to protection. No court has jurisdiction to protect them, or know what their rights are, except the court in which the receivership is pending.

I see no reason for the establishment of a new rule of jurisdiction and procedure, full of uncertainty, when the sound and established rule furnishes ample protection for the rights of all.